PIXLEY AND ALS. V. ROANOKE NAVIGATION COMPANY AND ALS.

March 17.

Absent, *Anderson, J.**

1. A court of equity has no jurisdiction to restrain a navigation company from collecting tolls on the streams to which their charter refers, on the ground that the company had failed to improve the streams as their charter prescribed, or to keep them in order.

2. The only mode of proceeding against a corporation in such case is by *quo warranto* at the suit of the Commonwealth.

3. A cause of forfeiture of its charter by a corporation cannot be taken advantage of, collaterally or incidentally, but can be enforced only in a court of law by a direct proceeding against the corporation.

4. A charter of incorporation is not a contract between the corporate body on the one hand and individuals whose rights and interests may be affected by the exercise of its powers on the other; but it is a compact between the corporation and the government from which they derive their powers. Individuals, therefore, cannot take it upon themselves, in the assertion of private rights, to insist on breaches of the contract by the corporation as a ground for resisting or denying the exercise to a corporate power.

This was a bill in the circuit court of Halifax county by Luther Pixley and others to enjoin the Roanoke Navigation Company from charging tolls for the navigation of the Roanoke river and its tributaries, on the ground of its failure to keep these rivers in a proper condition. The injunction was granted. There was a demurrer to the bill, and also an answer by the company.

* He was related to some of the parties.

Pixley and als. v. Roanoke Navigation Company and als.

The cause came on to be heard on the 8th of October, 1878, when the court dissolved the injunction and dismissed the bill with costs; and the plaintiffs obtained an appeal to this court. The case is fully stated in the opinion of *Christian,* J.

*J. A. Meredith* and *E. Barksdale, Jr.,* for the appellants.

*W. W. Henry,* for the appellees.

CHRISTIAN, J., delivered the opinion of the court.

This case is before us on appeal from a decree of the circuit court of Halifax county. The bill is filed by the appellant Pixley and fifteen other plaintiffs, in which they allege that they reside and are engaged in business in the town of Clarksville, Mecklenburg county, Virginia, situated near the Roanoke river, and are compelled to use the Roanoke river and its tributaries for the transportation of their tobacco and merchandize; that the general assembly of North Carolina, in the years 1812, 15, 16 and 17, incorporated the Roanoke Navigation Company, to improve the navigation of that State so far as respects the Roanoke river and its tributaries; and that by an act of the general assembly of Virginia, passed on the 11th day of November, 1816, the exclusive right to improve the navigation of the said river and its branches, within the State of Virginia, was vested in the said Roanoke Navigation Company, incorporated by the said State of North Carolina; and the said Roanoke Navigation Company were authorized to improve the said Roanoke river and its tributaries in the said State of Virginia; and they were authorized by said act to receive tolls when they should have completed the navigation of said river and its tributaries in the said State of Virginia.

The bill further alleges that this privilege was granted

VOL. LXXV—41.

to said company in consideration of the expense that they might incur in cutting canals, erecting locks, building dams, and other works, in improving said river and its tributaries, and keeping the same in repair ; and that the said Roanoke Navigation Company were required by said act of the general assembly of Virginia to keep the said river and all its branches navigable in the State of Virginia, in good repair, and free for the navigation of batteaux and other vessels, by erecting proper locks and dams, and cleaning out all obstructions in the said river and its branches, and keeping the same free from obstructions ; and they therefore allege that the said Roanoke river and its branches have been and are now ancient common-ways for all the citizens of the Commonwealth of Virginia, with their boats, lighters and other vessels, to navigate, sail, pass, and repass and labor at their will and pleasure, without any impediment or obstruction whatever.

The bill further alleges that the said Roanoke Navigation Company, its president and directors, have failed to make said Roanoke river, Dan river, Banister river, and Staunton river (tributaries to said Roanoke river), capable of being navigable by batteaux and other vessels, and that for the space of ten years have suffered the Dan, Staunton and Banister rivers to be and to remain obstructed, so as to render navigation impossible in some parts of the same, and extremely difficult and dangerous in other parts.

They further complain that the said Roanoke Navigation Company have demanded and received certain sums of money in the way of tolls for navigating said rivers and transporting their produce and merchandise on the same.

They further charge that the Richmond and Danville Railroad Company has been constituted an agent of the said Roanoke Navigation Company, to demand and collect tolls for transporting their produce and merchandise on said rivers, and that the said railroad company refuses to

Pixley and als. v. Roanoke Navigation Company and als.

deliver their produce and merchandise in the city of Richmond until the tolls (which they characterize "illegal tolls") are paid.

They further charge that there is now pending a proceeding in the circuit court of Halifax to annul the charter of the said Roanoke Navigation Company, which proceeding was taken by authority of a joint resolution of the general assemby of Virginia, and that they believe there can be no doubt that the result of that proceeding will be to annul the said charter, and to declare that they have no right to demand tolls of the complainants or any other citizens of the Commonwealth.

To this bill the said Roanoke Navigation Company, Charles H. Cabaniss, agent of the same, and the Richmond and Danville Railroad Company are made parties defendant; and the prayer of the bill is, that the defendants may be enjoined and restrained from demanding or exacting tolls from the complainants till the further order of the court; and there was a prayer for general relief.

Upon the filing of this bill, an injunction was awarded by the circuit judge of Halifax county; but this injunction, upon the demurrer and answer of the defendant, the Roanoke Navigation Company, was afterwards dissolved, and the bill of the complainants dismissed. And from this decree, dissolving the injunction and dismissing the complainants' bill, an appeal was awarded by one of the judges of this court.

The court is of opinion that there is no error in this decree. Without reference to the answer and the exhibits filed therewith, it is manifest that the bill ought to have been dismissed and the injunction dissolved upon the demurrer.

It is plain that upon the complainants' own showing of their case, as made by the bill, they had no standing in a court of equity. Assuming all the facts they state to be

true, their plain remedy was in a court of law by writ of *quo warranto* to be instituted by the government, and not in a court of chancery.

These facts, if true, as they must be taken to be true upon a demurrer, show sufficient ground for a forfeiture of the charter of the corporation; but conceding that there was cause for forfeiture, it is well settled that this cannot be taken advantage of, against a corporation collaterally or incidentally, but in no other mode than by a direct proceeding against the corporation for a forfeiture of its charter. That can only be enforced in a court of law, and a court of chancery can have no jurisdiction to stop a corporation from the exercise of its franchises conferred by the legislature, until the forfeiture of its charter has been declared by proper proceedings in a court of law. This results from the very nature of an act of incorporation. It is not a contract between the corporate body on the one hand, and individuals, whose rights and interests may be affected by the exercise of its powers, on the other. It is a compact between the corporation and the government, from which they derive their powers. Individuals, therefore, cannot take it upon themselves, in the assertion of private rights, to insist on breaches of the contract of the corporation, as a ground for resisting or denying the exercise of a corporate power. That can be done only by the government with which the contract was made, and in proceedings duly instituted against the corporation. As was said by Judge Bigelow, in *Heard* v. *Talbott*, 7 Grey's R. 120, 130, "It would not only be a great anomaly to allow persons not parties to a contract to insist on its breach and enforce a penalty for its violation; but it would be against public policy, and lead to confusion of rights, if corporate powers and privileges could be disputed and defeated by every person who might be aggrieved by their exercise. Therefore it has been often held that a cause of forfeiture,

however great, cannot be taken advantage of, or enforced, against corporations collaterally or incidentally, or in any other mode than by a direct proceeding for that object in behalf of the government." See also Angel & Ames on Corporations, § 777, and cases cited.

*Boston Glass Manufactory* v. *Langdon,* 24 Pick. R. 49; *Quincy Canal* v. *Newcomb,* 7 Metcalf's R. 276. See also *Attorney-General* v. *Tudor Ice Company,* 104 Mass. R. 239, in which there is a full and elaborate discussion of the whole subject, and in which the learned judge, delivering the opinion of the court, after reference to numerous authorities, concludes by saying that the only cases in which a court of equity can take jurisdiction are resolved into two classes. The one is of public nuisances, which affect or endanger the public safety or convenience and require immediate judicial interposition; and the other are cases of trusts for charitable purposes.

In *Attorney-General* v. *Utica Insurance Company,* 2 John. Ch. R. 371, Chancellor Kent, in a very able and elaborate opinion, after a thorough discussion of the question on principle and an extensive examination of authorities, held that a court of equity had no jurisdiction by way of injunction or restraint against the exercise of the rights and franchises of a corporation, but that the proper remedy was at law by information in the nature of *quo warranto.*

This court has affirmed in effect the same doctrine in *The Banks* v. *Poitiaux,* 3 Rand. 136, and in *Crump* v. *United States Mining Company,* 7 Gratt. 352.

Upon these authorities it is plain that the complainants had no remedy in a court of chancery, but that their remedy was in a court of law, by *quo warranto,* to be instituted by the government to establish a forfeiture of the charter of the company. The right to collect tolls is one of the most important franchises of the company conferred by their charter. They may continue to exercise this franchise until

a forfeiture is declared by proceedings taken directly against the company. This must be done at law, and a court of chancery has no jurisdiction to attain that result.

The court is therefore of opinion that there is no error in the decree of the circuit court in dissolving the plaintiff's injunction and dismissing their bill, and that the said decree of the said circuit court must be affirmed.

DECREE AFFIRMED.