# Wytheville.

## ELLIOTT'S KNOB IRON, STEEL AND COAL COMPANY V. STATE CORPORATION COMMISSION.

### June 13, 1918.

1. PENALTIES AND FORFEITURES—*Self-Executory.*—A forfeiture created by Constitution or statute law may be self-executory, contrary to the rule that in all forfeitures accruing at common law 'nothing vests in the Government until some legal step shall be taken for the assertion of its right.

2. PENALTIES AND FORFEITURES—*Self-Executory.*—Where a forfeiture is given by ·statute, the rules of the common law may be dispensed with, and the thing forfeited may either vest immediately, or on the performance of some particular act, as shall be the will of the legislature. This must depend upon the construction of the statute.

3. PENALTIES AND FORFEITURES—*Self-Executory—Strict Construction—Derogation of Common Law.*—A constitutional or statutory provision for a forfeiture to become effective before "some legal step" has been taken by the Commonwealth for the assertion of the forfeiture, as by inquest of office or some judicial proceeding or finding, is in derogation of the common law and, hence, will be strictly construed.

4. CORPORATIONS—*Presumption in Favor of Continued Existence and Against Forfeiture of Charter.*—Every presumption is in favor of the continued existence and against the conclusion that the charter of a corporation has been forfeited. Hence, the courts are always disinclined to hold that the charter of a corporation has been forfeited. This is especially true where the Commonwealth is not claiming that a forfeiture has occurred, but the contrary,·and no third person is so claiming; for the forfeiture of corporate franchises can be effected only by the State or private persons under statutory authority.

5. CORPORATIONS—*Waiver of Forfeiture—Construction Against Forfeiture.*—However clear the right of the State to forfeit the franchise of a corporation, it may waive such right. Unless, indeed, it is forbidden to do so by the State Constitution. And

in the construction of the Constitution, it must be strictly construed against the result of a forfeiture of the charter of a corporation.

6. CORPORATIONS—*Forfeiture of Charter—Section 157 of the Constitution.*—The object of section 157 of the Constitution of 1902 is not the forfeiture of the charter of any corporation, but the collection by the Commonwealth from every corporation of an annual registration fee and the requirement from it of an annual report "of the status, business or condition of such corporation." The revocation and annulment of the charter of such corporation is merely a penalty which the Constitution provides shall be imposed for the failure of a corporation to pay its annual registration fee or to make its said annual reports.

7. CORPORATIONS—*Section 157 of the Constitution of 1902—Whether Self-Executory—Forfeiture of Charter—Registration Fees—Reports.*—The provision in section 157 of the Constitution of 1902 imposing annual registration fees upon corporations and requiring annual reports from corporations, is not self-executory. The Constitution leaves it discretionary with the legislature to provide reasonable regulations with respect to how and when such annual registration fee should be assessed and with respect to how and when such fees should become due and payable, and with respect to the making of the annual reports. And in view of the "general laws" in fact enacted by the legislature (Acts 1902-3-4, page 137, sections 45, 48, tax bills 1903, 1906, section 41), it follows that the constitutional provision must be construed to mean that it did not impose the penalty of the "revocation and annullment of the charter" of a corporation until there was an assessment of its annual registration fee as provided in such "general laws," and it had thus become due and payable and there was thereafter the "failure" or default specified in the Constitution to pay such fee, *or* until there was the report required of it by the State Corporation Commission in accordance with such "general laws" and there was thereafter the "failure" or default specified in the Constitution to make such report.

8. CORPORATIONS—*Registration Fee—Necessity of Assessment.*—The State Constitution, by self-executing ordinance, or the legislature, by self-executing statute, unless prohibited by the State Constitution, might have made a declaration of forfeiture of the charters of corporations upon their mere failure, for a specified time, to pay their annual registration fees or to make their reports of status, business or condition, independently of any attendant or preliminary steps in procedure with respect to these matters having been taken or not taken

by the State through its governmental agency, the State Corporation Commission, this was not done by the provisions of the Constitution of 1902, section 157; sections 45 and 48, Acts 1902-3-4, page 137, tax bills 1903, 1906, section 41.

9. CORPORATIONS—*Registration Fee—Necessity of Assessment.*— Section 157 of the Constitution of 1902 did not itself impose the tax· (the annual registration fee), but left with the legislature the duty to impose it. Consequently, the authority inherent in the legislature to prescribe the method or system of such taxation was not taken away from it by the Constitution. The method or system adopted by the legislature for imposing such tax was to provide for an assessment of it by the State Corporation Commission. Under well established rules concerning taxation, such tax could not be considered as imposed or as having become due and payable until there was an assessment of it by the State Corporation Commission.

10. TAXATION—*Strict Construction of Statute.*—Laws imposing taxes are strictly construed against the taxing power and in favor of the citizen and they are never held to have been imposed unless by express statutory enactment or by necessary implication therefrom.

11. CORPORATIONS—*Registration Fee—Necessity of Assessment.*— Where the legislature has prescribed a method or system of taxation which includes the requirement of an assessment, all the steps in the procedure of the assessment required by the statute must be taken before the tax can be considered as having been imposed and as having become due and payable. And it is immaterial which process of the assessment is concerned, the listing or the valuation for taxation, if an assessment is included in the system or method of taxation prescribed. It is equally immaterial whether the valuation includes the exercise of judicial judgment as to the value of property or is a mere ascertainment of facts and application thereto of a scale of taxation fixed by statute.

12. CORPORATIONS—*Report—Failure to Make as Ground for Forfeiture.*—Under section 157 of the Constitution of 1902 and the tax bills of 1903 and 1906, section 41, the report, the failure of the making of which is one ground of forfeiture, is a "report of the status, business and condition" of the corporation. As to such report it is manifest from both the statute as contained in the tax bills of 1903 and 1906 and from section 157 of the Constitution, that a discretion was vested in the State Corporation Commission as to· the form of it and as to what details it should cover; and no default in making such report occurs until such a report is required

9

of the corporation by affirmative action of the State Corporation Commission by forwarding forms for such report to the corporation.

13. CORPORATIONS—*Forfeiture of Charter—Section 157 of the Constitution of 1902—Tax bill 1903.*—In the case at bar the corporation contended that under the tax bill of 1903 its charter was forfeited for its failure, for the period designated in the Constitution (section 157) and in such statute, to make the report of "the amount of its maximum capital stock as of the first day of January" of 1904. It is true that the tax bill of 1903 did require such a report; but that statute, as is apparent from an examination of it, did not provide the penalty of forfeiture for any failure to make such report. It was from the failure to make report of "its status, business or condition as the State Corporation Commission shall require," from which the forfeiture was to ensue, and not from the failure to make the report of the amount of its maximum capital stock.

14. CORPORATIONS—*Estoppel.*—The failure of the Commonwealth to annually assess a corporation with the registration fee imposed by law and to require the report of the status, business or condition of the corporation annually for a number of years, will not estop the Commonwealth from making the assessment and requiring the report.

Appeal from the State Corporation Commission.

*Affirmed.*

The appellant was incorporated by the Circuit Court of Augusta county, Virginia, June 13, 1890, and its charter was duly recorded as required by law in the office of the Secretary of the Commonwealth, June 29, 1890, with an authorized capital stock of "not less than one million dollars * * * and not more than ten million dollars * * *"

By section 157 of the Constitution of Virginia of 1902, a constitutional provision was adopted which was not contained in the State Constitution theretofore existing, and which, so far as material in the instant case, is as follows:

"Section 157. Fees from corporations. Provision shall

be made by *general laws for the payment* \* \* \* to the Commonwealth by every domestic corporation, \* \* \* of an annual registration fee of not less than five dollars nor more than twenty-five dollars, which shall be irrespective of any specific license, or other tax imposed by law upon such company for the privilege of carrying on its business in this State, or upon its franchise or property; *and for the making,* by every such corporation (*at the time of paying such annual registration fee*), *of such report* to the State Corporation Commission, of the status, business or condition of such corporation, *as the General Assembly may prescribe.* \* \* \* *The failure* by any corporation *for two successive years to pay its annual registration fee, or to make its said annual reports,* shall, *when such failure shall have continued for ninety days after the expiration of such two years, operate as a revocation and annulment of the charter* of such corporation; \* \* \* *and the General Assembly shall provide additional and suitable penalties* for the failure of any corporation to comply promptly with the requirements of this section, or of any laws passed in pursuance thereof. The commission shall compel all corporations to comply promptly with such requirements, *by enforcing in the manner* hereinbefore authorized, such fines and penalties against the delinquent company as may be provided for, or authorized by this article; \* \* \*" (Italics supplied.)

In pursuance of such constitutional provision, the legislature, thereafter, enacted the following statutes on the subject, namely:

Sections 45 and 48 of the Acts of Assembly, 1902-3-4, page 137 (Code 1904, section 1313-a), which became a law April 15, 1903 (so far as material), as follows:

"(45) That the" (State Corporation) "commission shall have made and kept in its clerk's office a register of all corporations, which register shall contain the corporate names

of all corporations heretofore chartered and existing at this date, so far as the same may be obtainable, and those hereafter chartered by the laws of this State * * * and as to domestic corporations shall contain also the following information, to-wit: Date of incorporation. * * * Amount of capital stock. * * * Nature of corporate enterprise or business to be conducted. The place of its principal or general office or place of business.

"The Secretary of the Commonwealth shall forthwith prepare and furnish to the commission a list of all charters recorded in his office up to April first, nineteen hundred and three, containing the above information as far as shown by the records of his office."

"(48) That *the commission* shall *annually,* on or before the first day of December, *notify each corporation subject to a registration fee of the amount thereof, and when the same is payable,* and when paid its clerk shall promptly receipt therefor to the corporation paying the same, such notice to be mailed to the last address furnished by such company." (Italics supplied.)

The tax bill, which became a law April 16, 1903 (so far as material), as follows:

"41. Every domestic corporation, other than a purely charitable institution * * * whose maximum capital stock exceeds three hundred thousand dollars, shall pay an annual registration fee of twenty-five dollars; said annual registration fee shall be irrespective of any specific license tax or other tax or fee imposed by law upon said corporation for the privilege of carrying on its business in this State or upon its franchise, property, or receipts.

"Every corporation shall obtain from the State Corporation Commission a blank form upon which to report the amount of its maximum capital stock, as of the first day of January of each year, and shall file its report made upon

such blank form with the State Corporation Commission by the first day of February of each year.

"The State Corporation Commission shall assess against such corporation the registration fee herein imposed, and a certified copy of the assessment, when made, shall be immediately forwarded by the clerk of the State Corporation Commission to the Auditor of Public Accounts, and to each such corporation.

"Upon the payment of said annual registration fee the State Corporation Commission shall issue a certificate of registration, and the clerk of said State Corporation Commission shall record said certificate in a proper book to be kept by him for the purpose.

"Every domestic * * * corporation at the time of paying such registration fee shall make to the State Corporation Commission, on forms prescribed by it, such report of its status, business, or condition as the State Corporation Commission shall require.

"The failure of any corporation for two successive years to pay its annual registration fee, or to make such report, shall, when such failure shall have continued for ninety days after the expiration of such two years, operate as a revocation and annulment of the charter of such corporation * * * and the State Corporation Commission shall publish the fact of such revocation or annulment once a week, for four consecutive weeks, in a daily newspaper published in the city of Richmond, Virginia." Laws 1902-1904, chapter 148.

The tax bill which became a law March 17, 1906, amended the last three paragraphs of section 41 of the tax bill of 1903 next above quoted so that the whole of such statute (so far as material) read as follows:

"Every domestic corporation, other than a purely charitable institution * * * whose maximum capital stock exceeds three hundred thousand dollars, shall pay an annual

70 Elliott's Knob I., etc. Co. *v.* Corp. Com., 123 Va. 63.

Statement.

registration fee of twenty-five dollars; said annual registration fee shall be irrespective of any specific tax or other tax or fee imposed by law upon said corporation for the privilege of carrying on its business in this State, or upon its franchise, property or receipts.

"The State Corporation Commission *shall ascertain from its records* the amount of the authorized maximum capital stock of each of said corporations, as of the *first day of January* of each year, and shall assess against each such corporation the registration fee herein imposed, and a certified copy of the assessment, when made, shall be forwarded by the clerk of the State Corporation Commission, before the fifteenth day of February, to the Auditor of Public Accounts, and to each such corporation.

"The State Corporation Commission may require every domestic * * * corporation, in the month *of January, in each year,* and within such time as it may prescribe, to make the commission, on forms prescribed by it, such report of the status, business, and condition of each such corporation as the commission may call for.

"The failure of any corporation for two successive years to pay its annual registration fee, or to make such report, shall, when such failure shall have continued for ninety days after the expiration of such two years, operate, *without further proceedings,* as a revocation and annulment of the charter of such corporation, * * * and the State Corporation Commission shall publish the fact of such revocation or annulment once a week for four consecutive weeks in a daily newspaper published in the city of Richmond, Virginia." (Italics supplied.) Laws 1906, chapter 294.

(The changes in the statute law on the subject made by the last named statute are indicated by the italicising which has been supplied.)

The appellant as a matter of fact was not *assessed* with any annual registration fee or *notified* to pay any such fee

until the order complained of was entered by the State Corporation Commission, which is as follows:

"Commonwealth of Virginia,
"Department of the State Corporation Commission.
"Case No. 663.
"City of Richmond, November 22nd, 1917.

"Whereas, the Elliott's Knob Iron, Steel and Coal Company was incorporated by a decree of the Circuit Court of Augusta county, Virginia, entered June 13, 1890, and the charter so granted was duly recorded in the office of the Secretary of the Commonwealth, June 20, 1890, the principal office being Staunton, Virginia, and the maximum capital authorized by said charter being ten million dollars; and

"Whereas, this corporation has failed to obtain from the State Corporation Commission the forms upon which to make report of the amount of its maximum capital stock as of the first day of January of each of the years 1904, 1905 and 1906, and failed to make the report for such years as required by section 41 of the act entitled 'An act to raise revenue for the support of the government and public free schools and to pay the interest on the public debt, and to provide a special tax for pensions, as authorized by section 189 of the Constitution,' approved April 16, 1903, and on account of the failure of said corporation to make such report the State Corporation Commission has made no assessments of the annual registration fee and franchise tax for these and subsequent years; and

"Whereas, it has now been brought to the attention of the commission that Elliott's Knob Iron, Steel and Coal Company, on the first day of January, 1904, owned between twenty-six thousand and twenty-seven thousand acres of mountain land in the western portion of Augusta county, Virginia, and it was its duty under the law to make the

aforesaid report in order that the State Corporation Commission might assess it with the annual registration fee and franchise tax under sections 41 and 43 of the tax laws above referred to; and

"Whereas under similar conditions it has been the custom of the State Corporation Commission to assess the annual registration fee and franchise tax for all of the years 1904 to date; and

"Whereas, by an act of the General Assembly approved March 17, 1906, section 41 of the tax law was so amended as to make it the duty of the State Corporation Commission to ascertain from its records the amount of the authorized maximum capital stock of each of said corporations as of the first day of January of each year and assess against each such corporation the registration fee herein imposed, and further the section was so amended as to leave the question of requiring reports under it to the discretion of the State Corporation Commission, and the commission being authorized by law to use its discretion in this matter, has not required reports to be made by corporations under the provisions of this section, but has proceeded to assess upon information secured from its own records:

"Therefore, it is ordered that the annual registration fee, under section 41, and the annual franchise tax, under section 43 of the tax law, be assessed against Elliott's Knob Iron, Steel and Coal Company for each of the years 1904 to 1917, inclusive, and that the said assessments be served upon Fitzhugh Elder, Esquire, attorney for the corporation, Staunton, Virginia, by the clerk of the commission, and that copies of said assessments be certified by the said clerk to the Auditor of Public Accounts, the aggregate of such assessments being as follows:

"For registration fee for years 1904 to 1917, inclusive, 14 years, at $25.00 a year........$    350.00

"For franchise tax for years 1904 to 1917, inclusive, 14 years, at $1,100 a year........ 15,400.00

"Assessments.

"And thereupon the annual registration fee, under section 41, and the annual franchise tax, under section 43 of the tax law, were assessed against Elliott's Knob Iron, Steel and Coal Company for each of the years 1904 to 1917 inclusive, and the said assessments were served upon Fitzhugh Elder, attorney for the corporation, Staunton, Virginia, by the clerk of the commission, and copies of said assessments were duly certified by the said clerk to the Auditor of Public Accounts, such assessments being in the words and figures following."

(Then follows separate annual assessments of appellant accordingly, for each of the years 1904 to 1917 inclusive, all dated at Richmond, Va., November 22, 1917 of "Registration fee $25.00. Franchise tax $1,100.00," stating in effect, that such assessments were respectively payable "on or before March 1, 1904," 1905-6-7-8-9-10-11-12-13-14-15 and 1916, with no penalties added except for the years 1911 to 1916 inclusive, but for the latter years a penalty of five per cent. on the registration fee and franchise tax and six per cent. interest from March 1st of such years respectively to date of final settlement are imposed as penalties, as stated in such assessments, for the default of appellant in not having made payment of such fee and tax on such March 1st dates, but the order complained of does not require any five per cent. penalty to be paid or any interest, except, of course, interest would run from the date of the order on the $15,400 aggregate of franchise taxes covered thereby until paid.)

The said order sufficiently sets forth the facts constituting the reasons for the failure of the Corporation Commission to make the assessment aforesaid any sooner than it did.

The statute law authorizing the assessment of the annual State franchise tax aforesaid is not drawn in question in

the instant case, so far as its phraseology is concerned, and, hence is not here quoted. See section 43, Acts Assembly 1902-3-4, at page 182.

*Fitzhugh Elder,* for the appellant.

*Jno. R. Saunders, Attorney-General,* and *J. D. Hank, Jr., Assistant Attorney-General,* for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The position of the appellant is that by virtue of the provision of the Constitution of the Commonwealth of Virginia above quoted and the statute law enacted in pursuance thereof the failure of the appellant for two years to pay its annual registration fee of 1904 or to make in 1904 its annual report of the amount of its maximum capital stock and the continuance of such failure for ninety days after the expiration of such two years, *ipso facto* forfeited the charter of the appellant, so that its existence was thereby extinguished. Hence that it was not in being so as to be assessable with any registration fee or franchise tax for the years subsequent to 1906 covered by the order complained of. That the Corporation Commission had no power to assess it for any registration fees and franchise tax save only for the years 1904, 1905 and 1906. That beyond such assessments the order complained of is invalid, void and of no effect.

Such position raises the following questions:

1. If the Constitution of 1902 and the statutes above quoted, when correctly construed, would have the effect of declaring the character of appellant forfeited in accordance with the position aforesaid of the latter, would such constitutional and statutory provisions be void because in conflict with the Constitution of the United States (Article

1, section 10) which declares that—"No State shall * * * pass * * * any law impairing the obligation of contracts * * * "?

2. Was the charter of the appellant *ipso facto* forfeited, in accordance with the position aforesaid of appellant, upon the mere occurrence of its default, at the time, and its continuance for the period aforesaid?

In the view we take of the case it will be unnecessary for us to consider the first question, since in our opinion the second question must be answered in the negative.

Coming then to the consideration of the second question:

1. It is true that a forfeiture created by Constitution or statute law may be self-executory, contrary to the rule that "in all forfeitures accruing at common law nothing vests in the government until some legal step shall be taken for the assertion of its right." *United States* v. *Grundy,* 3 Cranch 337-351, 2 Law Ed. 459; 5 Thomp. on Corp. (1st ed.), sections 6586-7-8.

As said by Chief Justice Marshall in the case last cited: "Where a forfeiture is given by statute, the rules of the common law may be dispensed with, and the thing forfeited may either vest immediately, or on the performance of some particular act, as shall be the will of the legislature. This must depend upon the construction of the statute."

But a constitutional or statutory provision for a forfeiture to become effective before "some legal step" has been taken by the Commonwealth for the assertion of the forfeiture, as by inquest of office or some judicial proceeding or finding, is in derogation of the common law and, hence, will be strictly construed.

As is said by Mr. Justice Story in *Fairfax's Devisees* v. *Hunter's Lessee,* 7 Cranch 603, 3 Law Ed. 453, at page 459: "But it is contended that the common law as to inquests of office and seizure, so far as the same respects the

76 Elliott's Knob I., etc. Co. *v.* Corp. Com., 123 Va. 63.

Opinion.

land in controversy, is completely dispensed with by statutes of the Commonwealth so as to make the grant to the original plaintiff in 1789 complete and perfect. * * * But such an effect ought not, upon principle of public policy, to be presumed upon light grounds. * * * The common law, therefore, ought not to be deemed to be repealed, unless the language of the statute is clear and explicit for this purpose."

As said in 5 Thomp. on Corp. (2nd ed.), section 6475: "But it requires strong and unmistakable language to authorize the court to hold that the legislature intended to dispense with all judicial proceeding declaring a dissolution." (Citing numerous cases.)

As said by Chief Justice Waite in *St. Louis, etc., R. Co.* v. *McGee,* 115 U. S. 469, 473, 6 Sup. Ct. 123, 125, 29 L. Ed. 446, 448: "* * * until a forfeiture has been asserted by the United States, either through judicial proceedings instituted under authority of law for that purpose or through some legislative action legally equivalent to a judgment of office found at common law * * * legislation to be sufficient to accomplish that result must manifest an intention by Congress to reassert title and to resume possession. As it is to take the place of a suit by the United States to enforce a forfeiture and judgment therein establishing the right, it should be direct, positive and free from all doubt or ambiguity." See for same holding, *Bybee* v. *Oregon, etc., R. Co.,* 139 U. S. 663, 11 Sup. Ct. 641, 35 L. Ed. 305, 307.

As said in *Nicolai* v. *Maryland Agr. Ass'n,* 96 Md. 323, at page 329, 53 Atl. 965, at page 967: "There can be no doubt that the legislature may use such language in a charter as will make a forfeiture clause self-executing and the corporation will *ipso facto* cease to exist, but it requires strong and unmistakable language to work such results, and 'in the construction of clauses prescribing a condition or contingency, the courts seem generally opposed to

that construction which supports a forfeiture *ipso facto* without judgment of dissolution in a court proceeding. 9 Ency. Law (2nd) 553.'"

Moreover, every presumption is in favor of the continued existence and against the conclusion that the charter of a corporation has been forfeited. Hence, the courts are always disinclined to hold that the charter of a corporation has been forfeited. 10 Cyc. 1279; 5 Thomp. on Corp. (2nd ed.), section 6523. This is especially true in such a case as that before us, where the Commonwealth is not claiming that a forfeiture has occurred, but the contrary, and no third person is so claiming; for the forfeiture of corporate franchises can be effected only by the State or by private persons under statutory authority (10 Cyc. 1278) ; and however clear the right of the State to forfeit the franchise of a corporation, it may waive such right. 10 Cyc. 1088. Unless, indeed, it is forbidden to do so by the State Constitution. And in the construction of the Constitution, upon the same principles above adverted to, it must be strictly construed against the result of a forfeiture of the charter of corporations.

This brings us to the consideration of the provision of our Constitution (section 157 above quoted), on this subject. As should be noted, the object of such constitutional provision is not the forfeiture of the charter of any corporation, but the collection by the Commonwealth from every corporation of an annual registration fee and the requirement from it of an annual report "of the status, business or condition of such corporation." The "revocation and annulment of the charter of such corporation" is merely a penalty which the Constitution provides shall be imposed for the failure of a corporation "to pay its annual registration fee or to make its said annual reports." It is the manifest intendment of the Constitution that the corporation shall continue in existence as a source of revenue to the

Commonwealth, so long as its status, business or condition is reported as the legislature, in accordance with the Constitution, may prescribe. The forfeiture of its charter defeats that purpose. It is very true that the specified default is allowed to have such a result; but it is not to be assumed, in the absence of a specific provision in the Constitution to that effect, that it intended to prohibit the legislature from providing certain preliminary steps in procedure for the collection of the revenue and for the ascertainment of the status of corporations, before the default which might result in such forfeiture should be considered as having occurred. And just here we come to the consideration of precisely what "failure" or default it is which must result in the imposition by the Constitution of the penalty aforesaid. And here we observe that the Constitution is not self-executory in the imposition of the annual registration fee or the requirement of the annual reports aforesaid. The constitutional requirement is that, "Provision *shall be made by* general laws for the payment to the Commonwealth * * * by every domestic corporation of an annual registration fee * * * and for making by every such corporation (at the time of paying such annual registration fee) of such report to the State Corporation Commission, of the status, business or condition of such corporation * * *" (Italics supplied.) It follows that the Constitution, by such provision, left it discretionary with the legislature when it came to enact such "general laws" to provide reasonable regulations with respect to how and when such annual registration fee should be assessed and with respect to how and when such fees should become due and payable, and with respect to the making of the reports aforesaid. In view of the "general laws" in fact enacted accordingly by the legislature (above quoted), it further necessarily follows that such constitutional provision must be construed to mean that it did not impose the

penalty aforesaid of the "revocation and annulment of the charter" of a corporation until there was an assessment of its annual registration fee as provided in such "general laws," and it had thus become due and payable and there was *thereafter* the "failure" or default specified in the Constitution to pay such fee, *or* until there was the report aforesaid required of it by the State Corporation Commission in accordance with such "general laws" and there was *thereafter* the "failure" or default specified in the Constitution to make such report.

In other words, while there can be no doubt that the State Constitution, by self-executing ordinance, or the legislature, by self-executing statute, unless prohibited by the State Constitution, might have made a declaration of forfeiture of the charter of corporations upon their mere failure, for a specified time, to pay their annual registration fees or to make their reports of status, business or condition, independently of any attendant or preliminary steps in procedure with respect to these matters having been taken or not taken by the State through its governmental agency, the State Corporation Commission, it is manifest to us that this was not done by the provisions of the Constitution and statutes aforesaid. This seems clear to us from a mere consideration of such provisions themselves. We are strengthened in our view of the correctness of such conclusion by our consideration of the following authorities:

In the cases of *Silliman* v. *Fredericksburg, etc., R. Co.,* 27 Gratt. (68 Va.) 119; *Staats* v. *Board,* 10 Gratt. (51 Va.) 400; *Wild's Lessee* v. *Serpell,* 10 Gratt. (51 Va.) 405; *Hale* v. *Branscum,* 10 Gratt. (51 Va.) 418; *Levasser* v. *Washburn,* 11 Gratt. (52 Va.) 572; *Matney* v. *Ratcliff,* 96 Va. 231, 31 S. E. 512 (cited and relied on by appellant), the statutes involved made the declaration of forfeiture in question upon the mere failure of the corporation or person affected to perform a certain act. In the first-named case

the act to be performed was the completion of a railroad to a point fixed, by a date prescribed in the statute itself; and in all of the other cases the act to be performed was the causing by the land owner of the entry of his lands to be made on the commissioner's books, and to that end he was required to return a list of his lands for taxation. Under the law as it stood and was involved in the latter cases, the statute did not provide for an assessment of lands by the commissioners of revenue going upon them in the absence of a list of land furnished the commissioner by the land owner. The statutes involved required no attendant or preliminary steps in procedure with respect to such acts to be taken by the State through any of its governmental agencies. The statute law in imperative and distinct terms, preceding the event, made a declaration of forfeiture to take effect upon the mere happening of that event. The legislature having thus spoken in unmistakable terms, nothing remained for the courts to do in the premises but to allow the statutory enactment to take effect when the event occurred.

In *Kinney* v. *Beverley*, 2 Hen. & Mun. (12 Va.) 318, however, cited and relied on by the appellee, the statute involved expressly provided, "That in case the tax on any tract of land shall not be paid for the space of three years, the right to such land shall be lost, forfeited and vested in the Commonwealth;" and there was nothing in that statute limiting the effect of such express provision. But there was passed by the same session of the legislature which enacted such statute, another act which provided for the assessment of lands for taxation by commissioners whose duty it was to make such assessment, and the land owners were not required to return a list of their lands or to cause an entry thereof to be made on the commissioner's books. The court held that, since under the last-named statute law no collection could have been made of taxes on land until it was as-

sessed for taxation, no forfeiture of the land had occurred under the first-named statute, by reason of the non-payment of the taxes on the land for the statutory period. In his statement of the case at page 325 of 2 Hen. & Mun., Judge Tucker says: "The law is that the forfeiture shall take place in case the tax be not paid. What tax? Surely that which has been duly assessed and imposed. But when the lands have not been listed, no tax has been assessed and imposed upon them."

So in the case before us, the Constitution did not itself impose the tax (the annual registration fee), but left with the legislature the duty to impose it. Consequently, the authority inherent in the legislature to prescribe the method or system of such taxation (Desty on Taxation, section 87, page 426) was not taken away from it by the Constitution. The method or system adopted by the legislature for imposing such tax was to provide for an assessment of it by the State Corporation Commission. Under well established rules concerning taxation, such tax could not be considered as imposed or as having become due and payable until there was an assessment of it by the State Corporation Commission. Desty on Taxation, section 91, page 443; section 92, page 449. No collection could have been made of it by the Commonwealth until it was so assessed. As said by Desty on Taxation, section 91, page 443: "The manner of imposing the taxes prescribed by law must be followed and the authority strictly pursued." Again, *idem,* section 92, page 449: "The legislature has power to prescribe the form of proceedings in the assessment and collection of taxes, and on matters of form may declare what steps shall be essential to the validity of a tax. The essentials of a valid tax are (1) a levy by a competent legislative authority; (2) a valid assessment of property upon which such tax is levied. * * * The assessment is necessary to the validity of a tax; and taxes are not due unless they are assessed, how-

11

82 Elliott's Knob I., etc. Co. *v.* Corp. Com., 123 Va. 63.

Opinion.

ever equitable they may be. \* \* \* It is the basis of all subsequent proceedings and not to be dispensed with, as a tax levied without any list or valuation is void. \* \* \* Assessment is so far an inseparable incident to taxation that no right of action arises until an assessment is made. \* \* \*"

Hence under the case of *Kinney* v. *Beverley, supra,* prior to its assessment there could have been in the instant case no default or "failure" of the appellant to pay the tax (the registration fee) in question, since that tax, as contemplated by section 157 of the Constitution and the statute law aforesaid enacted in pursuance thereof, was the registration fee "duly assessed and imposed."

It is contended by appellant that, inasmuch as the annual registration fee aforesaid was fixed by the statute in proportion to the maximum capital stock of the appellant, no assessment by the State Corporation Commission was a condition precedent to the tax (the registration fee) becoming due and payable; and it is urged that the case is the same principle as that of a license tax imposed by statute where no assessment of it is essential to its collection. But this position loses sight of the consideration that where license taxes are collectible without prior assessment they are so collectible because the statute law imposing them does not provide for any assessment of them by any governmental agency. Such statute law expressly requires their payment without the preliminary step in procedure of an assessment. If the statute law imposing license taxes should prescribe such preliminary step in procedure, then the license taxes would be uncollectible until such procedure was had. The principle upon which this rule rests is that laws imposing taxes are strictly construed against the taxing power and in favor of the citizen and they are never held to have been imposed unless by express statutory enactment or by necessary implication therefrom. Desty on Taxation, section 91, page 443; *Combined Saw, etc., Co.* v.

*Flournoy,* 88 Va. 1029, 14 S. E. 976; *Brown* v. *Commonwealth,* 98 Va. 366, 36 S. E. 485; *Harris* v. *Commonwealth,* 81 Va. 240, 50 Am. Rep. 666; *Kloss* v. *Commonwealth,* 103 Va. 864, 49 S. E. 655.

It is further urged upon our consideration by appellant that there is a distinction to be taken between assessments which require a valuation to be made by the governmental agency making the assessment and assessments which do not require any valuation, as where the statute fixes the valuation and the assessment is made merely by listing the tax-payer and stating the amount of the tax as fixed by statute. We do not think that such a distinction is material in the case before us. Every assessment consists of two processes,—(1) the listing of the subjects of the taxation (the tax-payer and the subject taxed) and (2) adjudging the valuation by which the tax is ascertained. Desty on Taxation, section 93, page 456. Where the statute provides therefor, a tax list is as essential to the validity of the assessment as is the valuation. Desty on Taxation, section 112, pages 577-8. This is so because the whole proceeding is statutory and where the legislature has prescribed a method or system of taxation which includes the requirement of an assessment, all the steps in the procedure of the assessment required by a statute must be taken before the tax can be considered as having been imposed and as having become due and payable. And it is immaterial which process of the assessment is concerned, the listing or the valuation for taxation, if an assessment is included in the system or method of taxation prescribed as aforesaid. It is equally immaterial whether the valuation includes the exercise of judicial judgment as to the value of property or is a mere ascertainment of facts and application thereto of a scale of taxation fixed by statute. The material question on the subject is—what does the statute, which prescribes the method or system of taxation, provide shall be done by

some governmental agency as a part of the procedure of assessment? Whatever is so required is a preliminary step —a condition precedent—to the imposition of the tax, and until such step is taken the tax has not been imposed and has not become due and payable.

Now with respect to the tax (the annual registration fee) in the case before us:

By the tax bill of 1903 above quoted it was provided that— "The State Corporation Commission *shall assess* against each such corporation the registration fee *herein imposed,* and a certified copy of *the assessment, when made,* shall be immediately forwarded by the clerk of the State Corporation Commission to the Auditor of Public Acounts and to each such corporation." (Italics supplied.)

We are of opinion that while such statute was in force, namely, until it was amended by the tax bill of 1906 quoted in the statement above, preceding this opinion, no tax of the annual registration fee aforesaid was imposed until the assessment directed as aforesaid was made, and a certified copy thereof was forwarded to the Auditor of Public Accounts and to appellant, as required by the statute. We are further of opinion that the change of phraseology in the clause of the statute under consideration by the amendment of it in the tax bill of 1906 did not affect its construction in the particulars just mentioned and that under such statute as amended no annual registration fee was imposed upon appellant until the assessment was made, and a certified copy thereof was forwarded to the Auditor of Public Accounts and to appellant as required by such amended statute.

No such assessment of such annual registration fee having been made until the order complained of was entered by the State Corporation Commission, it follows, of course, that there has been no revocation or annulment of the charter of appellant by reason of the provisions of the Consti-

tution and statute law aforesaid on that subject because of a failure of the appellant to pay such fees or any of them for the period named in the Constitution and statute law on the subject.

Now with respect to the report required of appellant under the Constitution and statute law aforesaid:

It clearly appears from a consideration of the constitutional provision and the tax bills of 1903 and 1906 that the report, the failure of the making of which is one ground of the forfeiture aforesaid, is a "report of the status, business and condition" of the corporation. As to such report it is manifest from both the statute as contained in the tax bills of 1903 and 1906 and from section 157 of the Constitution, that a discretion was vested in the State Corporation Commission as to the form of it and as to what details it should cover; and we are of opinion that no default in making such report occurred on the part of the appellant until such a report was required of it by affirmative action of the State Corporation Commission by forwarding forms for such report to appellant with the call upon it for such report. The correctness of this conclusion is not, indeed, seriously questioned by appellant.

Appellant, however, contends that under the tax bill of 1903 its charter was forfeited for its failure, for the period designated in the Constitution (section 157) and in such statute, to make the report of "the amount of its maximum capital stock as of the first day of January" of 1904. It is true that the tax bill of 1903 did require such a report; but that statute, as is apparent from an examination of it, did not provide the penalty of forfeiture aforesaid for any failure to make such report. It was from the failure to make report of "its status, business or condition as the State Corporation Commission shall require," from which the forfeiture aforesaid was to ensue, and not from the

failure to make the report of the amount of its maximum capital stock.

But one other consideration urged upon us by appellant need be dealt with. It is insisted that the Commonwealth should not be allowed to take advantage of its failure to do what it was required by law to do, namely, assess the registration fee aforesaid annually and require the report of the status, business or condition of appellant annually. Such a position is indeed unique. Our attention has not been called to any other case like it and we have discovered none in the books in our investigation of the subject. It is rare that a victim insists upon the imposition of the extreme penalty of the law, where that penalty is the extinction of his or its existence. There can be no doubt that if the positions of the appellant and the Commonwealth were reversed and the latter was insisting upon the forfeiture of the charter of the appellant, the Commonwealth would be held not entitled to maintain such a position because of its failure to take the preliminary steps in procedure required by its own Constitution and statutes in order to impose upon appellant the duty to pay the tax and make the reports in question. It would be unquestionably held in such case that until the duty to pay the tax or make the report arose there could be no default on the part of appellant in any failure to make such payment or to make such report. The position taken before us by appellant in the instant case is, in effect, that the negligence of the Commonwealth, through its officials, must operate to change its constitutional ordinance and statutory enactments on the subject. This would be to effect constitutional and statutory enactment by application of the doctrine of estoppel and by the application of such doctrine against the Commonwealth, a sovereign body. On principle the doctrine of estoppel can have no such application. Moreover in the instant case the appellant's own action in the past has been inconsistent with its present

Elliott's Knob I., etc. Co. v. Corp. Com., 123 Va. 63. 87

Opinion.

position that its charter was forfeited and its existence ended upon the expiration of two years and ninety days from its failure to pay in 1904 its registration fee for that year. As appears from the petition of appellant it has continued to do business as a corporation since it claims to have forfeited and put an end to its existence as such. As stated in the petition—"Petitioner has agreed and bound itself, in so far as it has authority, so to do, to sell the fee of the 'Big Survey' (25,360 acres of land) from which the timber has been heretofore sold. * * * However, it being suggested that the State of Virginia might claim or assess * * * an annual registration fee and franchise tax against petitioner * * *," the proceeding upon review before us was set in motion to ascertain whether the proceeds of said sale were liable to said taxation. The question before us of the forfeiture of the corporate existence of appellant is raised at its instance in the midst of its activities in the exercise of its corporate life. Unlike the Commonwealth, it is not a sovereign body, which cannot be deprived of any of its rights without its own consent expressed through the legislature or other governmental agency duly authorized by the legislature so to do. It would seem, therefore, that the doctrine of estoppel, if it has any application, would apply against the appellant rather than in favor of it. However, the other reasons for our conclusion above stated are sufficient therefor.

Therefore, for the foregoing reasons, we are of opinion that there is no error in the order complained of and it will be affirmed.

*Affirmed.*