# Richmond

## COLONIAL INVESTMENT COMPANY, INCORPORATED v. CHERRYDALE CEMENT BLOCK COMPANY, INCORPORATED.

December 1, 1952.

Record No. 3990.

Present, All the Justices.

The opinion states the case.

*Adams, Porter & Radigan* and *Thomas G. Mays,* for the appellant.

*Oren R. Lewis, Frank L. Ball* and *McCandlish & Prichard,* for the appellees.

HUDGINS, C. J., delivered the opinion of the court.

The Cherrydale Cement Block Company, Inc., and others instituted separate attachment proceedings in equity against Richard Gianpa and Katie M. Gianpa, and the Alinon Construction Company.

The bills alleged that (1) Richard and Katie M. Gianpa were non-residents and were justly indebted to each complainant in a stated sum; (2) the Alinon Construction Company was a domestic corporation, dominated and controlled by the Gianpas, who owned all of its stock; (3) by deed dated March 4, and recorded March 5, 1948, the Gianpas, without consideration, and with intent to hinder, delay and defraud complainants and other creditors, conveyed to the Alinon Construction Company eleven lots, including Lots Nos. 25, 26, 27 and 28, in Birch Subdivision, Falls Church Magisterial District, Fairfax county, Virginia.

On September 30, 1948, an order was entered consolidating the different cases and rendering judgment on each attachment in the amount proven. The case was referred to Harry L. Carrico, a commissioner in chancery, who was directed to take an account of the liens binding the real estate, together with their dignities and priorities.

On January 2, 1948, the Gianpas executed three deeds of trust, one conveying Lot No. 25 to James B. Evans and Nathan Levin, trustees, to secure a note for $6,750; one conveying Lot No. 27 to the same trustees, to secure a note for $6,500; one conveying Lot No. 28 to the same trustees, to secure a note for $6,750, and on January 22, 1948, the same grantors conveyed Lot No. 26 to Nathan Levin and Nathaniel J. Taube, trustees, to secure two notes aggregating $8,500, one for $6,500 and the other for $2,000. The five notes were payable nine months after date, with interest at 5%, to the Colonial Investment Company.

The Alinon Construction Company, hereinafter designated "Alinon," by deed dated April 12, 1948, recorded May 19, 1948, conveyed the same four lots to Nathan Levin and James B. Evans, trustees, to secure a note for $15,000, payable six months after date, with interest at 5%, to E. E. Matthews.

The trustees and beneficiaries named in the five deeds of trust were not made parties to the original bills or petitions for attachments. While the case was pending before the commissioner, the trustees in the four deeds of trust executed by the Gianpas, advertised Lots Nos. 25, 27 and 28 for sale on October 29, 1948, and Lot No. 26 on November 12, 1948. The trial court, on complaint of the Cherrydale Cement Block Company, enjoined the trustees from making the sale. Thereafter the trustees and the beneficiaries filed a joint answer to the bill.

The Colonial Investment Company, hereinafter sometimes

referred to as "appellant," contends that it, in good faith, loaned the Gianpas $28,500, evidenced by the five notes, and secured by the separate deeds of trust hereinbefore mentioned, for the construction of a house upon each of the four lots. In the spring of 1948, it ascertained that the $28,500 was insufficient to complete the four houses. It thereupon agreed to lend the Gianpas an additional sum of $15,000 for this purpose. When appellant ascertained from an examination of the records that the Gianpas had conveyed the lots to Alinon, it required Alinon to execute a deed of trust on the four lots to secure the note for $15,000, payable to E. E. Matthews, agent and employee of appellant.

Pursuant to its agreement with the Gianpas, and relying upon the security of the four deeds of trust, executed by them, and the deed of trust executed by Alinon, appellant advanced to the Gianpas and Alinon the sum of $43,197.63, all of which had been expended for labor and material used in the construction of the four houses. This sum did not include interest on the principal obligations or certain other charges and expenses aggregating $7,382.01, claimed by appellant to be secured by the covenants in the deeds of trust.

On January 5, 1949, the cause came on again to be heard upon the issues raised by the various pleadings filed by the parties, at which time appellant moved the court to rescind paragraph 9 of its decree entered on September 30, 1948, which declared "Alinon Construction Company, Inc. is not a *bona fide* corporation, duly organized under the laws of the State of Virginia, and that all of the real property heretofore conveyed to the said corporation by the Defendants, Richard Gianpa and Katie M. Gianpa, his wife, * * * (by deed bearing date March 4, 1948) is in truth and fact the real property of the Defendants, Richard Gianpa and Katie M. Gianpa, and subject and liable to all judgments and attachments properly proved against the same."

This motion was overruled by the court, and "all matters and issues raised in the" pleadings were referred to Harry L. Carrico, commissioner in chancery.

■■ The court should have rescinded so much of its former decree as affected the rights of the beneficiaries named in the deeds of trust (1) because at the time the decree was entered the beneficiaries and trustees in the deeds of trust were not parties to the cause; and (2) because the court held that Alinon was not a *bona fide* corporation. The legality of corporate existence

cannot be attacked collaterally or in any manner other than by direct proceedings instituted by the Attorney General in the name of the Commonwealth. Code of 1950, sec. 13-66; *Pixley* v. *Roanoke Navigation Co.*, 75 Va. 320; *Dismal Swamp R. Co.* v. *John L. Roper Lbr. Co.*, 114 Va. 537, 77 S. E. 598, Ann. Cas. 1914C, 641; *Elliott's Knob Iron, etc., Co.* v. *State Corp. Comm.*, 123 Va. 63, 96 S. E. 353; *United Dentists* v. *Commonwealth*, 162 Va. 347, 173 S. E. 508; *Light* v. *Danville,* 168 Va. 181, 190 S. E. 276; 13 Am. Jur., Corp., secs. 61, 62, p. 206.

The refusal of the court to so modify its decree misled the commissioner. He stated in his report that he construed the decree to mean that the court was of opinion that the deed of trust on the four lots to secure the $15,000 note was null and void as to creditors of the Gianpas. This was an adjudication that the deed of trust held by appellant was null and void before any evidence was introduced on the subject.

█ Ordinarily, this error of the trial court would require a reversal of the final decree. However, the evidence in the cause, fairly construed, proves that the Gianpas conveyed the property to Alinon with the intent to hinder, delay and defraud their creditors, and that appellant had notice of such fraudulent intent.

The trial court overruled all exceptions to, and confirmed, the commissioner's report; and decreed that the four deeds of trust securing the notes aggregating $28,500, with interest at 5%, constituted first liens on Lots Nos. 25, 26, 27 and 28. It refused to allow interest from the date of the notes, but did allow it from the dates on which the different sums aggregating $28,500 had been disbursed. It also decreed that the payment of the twelve items aggregating $7,382.01 was not secured by the four deeds of trust, as claimed by appellant; and the deed of trust executed by Alinon, conveying the four lots to secure the $15,000 note, was not valid as to creditors of the Gianpas.

The first assignment of error is based upon that part of the final decree which, in effect, holds that the deed of trust executed by Alinon to secure E. E. Matthews, the sum of $15,000 was null and void as to attaching creditors.

The real issues raised by this assignment, and relied upon in the oral argument and briefs, are: (1) whether the Gianpas conveyed the lots to Alinon with intent to hinder, delay or

defraud their creditors; and (2) if so, whether appellant had notice of such fraudulent intent.

It is well settled that when fraud is relied upon to set aside a conveyance it must be expressly charged and must be proven by evidence that is clear, cogent and convincing.

In the instant case, the bills expressly allege that "the said defendants, Richard Gianpa and Katie M. Gianpa made the said conveyance, (to Alinon) in anticipation that this and other judgments would be recovered against them, to hinder, delay or defraud your complainant and other creditors and to preclude them from realizing anything from the aforesaid property."

It is conceded that there was no consideration for the deed from the Gianpas conveying the eleven lots to Alinon. Code of 1950, sec. 55-81, provides that "Every * * * conveyance * * * which is not upon consideration deemed valuable in law * * * shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made."

Code, sec. 55-80, provides that every conveyance made with intent to hinder, delay or defraud creditors, shall be void, not only as to existing creditors, but as to purchasers for value with notice of such fraudulent intent.

The evidence proving fraudulent intent on the part of the grantors in the deed to Alinon emanates from the Gianpas themselves, who testified that Richard Gianpa was president and Katie M. Gianpa was secretary of the corporation, which they owned and controlled, and that the transfer was made without consideration. Mrs. Gianpa testified that she and her husband conveyed the property to Alinon to avoid payment of a $60,000 claim asserted in an action instituted, or threatened to be instituted, against them for damages for personal injuries to a child, alleged to have resulted from their negligence. She said this was an unjust claim and "we wanted to protect ourselves."

In *Bruce* v. *Dean,* 149 Va. 39, 140 S. E. 277, it was held that a deed made with intent to defraud a recovery by a third person of damages in an action of tort, before trial and judgment, was fraudulent and void to the same extent as a conveyance made to hinder, delay and defraud existing creditors.

The evidence shows that appellant had notice of the fraudu-

lent intent of the Gianpas. Nathan Levin was the president and a member of the executive committee of the Colonial Investment Company. In his dealings with the Gianpas and Alinon, he was the Colonial Investment Company. When the Gianpas executed the deed of trust for the corporation, securing the note for $15,000, Mrs. Gianpa told Nathan Levin that she and her husband had conveyed the property to Alinon to avoid payment of a claim asserted against them for personal injuries to a child. Shortly after executing this deed of trust, she and her husband, as officers of Alinon, and on demand of Nathan Levin, conveyed the four lots in question to Simon and Ruth Wagman, son-in-law and daughter of Nathan Levin. This conveyance was made in consideration of an agreement, not made a part of the deed, but set forth in a letter dated June 23, 1948,* providing that

---

*"Alinon Construction Company, Inc.        June 23, 1948
Falls Church, Va.
"Gentlemen:

"In connection with the deed dated June 17th, 1948 from Alinon Construction Company, Incorporated to Simon Wagman and Ruth M. Wagman, it is understood that title to Lots 25, 26, 27, 28, 45 is held in trust for the benefit of the Alinon Construction Company, Incorporated only to the extent of any equity that may remain in the property aforementioned above the mortgages placed through the Colonial Investment Company. It being expressly understood that any costs or charges necessary to be expended in the completion of the aforementioned houses shall be a lien in favor of the Colonial Investment Company or its assigns, if it elects to advance funds for said purpose.

"It is understood and agreed that Nathan Levin has a one-half interest in Lot 26 over and above the actual costs of construction and upon the sale, after paying off the amounts advanced to erect the dwelling on the said lot 26, the proceeds of sale after expenses and costs of every nature and description that may be incurred, shall be divided between the said Nathan Levin and the Alinon Construction Company, Incorporated.

"With reference to Lot 45, it is understood and agreed that Simon Wagman and Ruth M. Wagman, their heirs or assigns, shall have the right to advance such sums of money, not in excess of $500.00, to place the property in a saleable condition and for the purpose of arranging new financing of the mortgages on the said property.

"It is further understood and agreed that the Colonial Investment Company shall have the exclusive sale of the aforementioned real estate for a period of sixty (60) days after completion on lots 25, 26, 27, and 28; it being understood, however, that as to lot 45, the Alinon Construction Company reserves the right to sell said house itself without the intervention of a broker.

"It is understood that all payments due under the mortgages of record are the liability and obligation of the said Alinon Construction Company and it agrees to pay the mortgages of record in accordance with their tenor.

       Very truly yours,
       COLONIAL INVESTMENT COMPANY
       By Nathan Levin
        Nathan Levin, President."

Nathan Levin should have a one-half interest in Lot No. 26, and appellant should have the exclusive right to sell the four lots, and out of the proceeds of sale, pay to the Gianpas, or Alinon, the surplus over and above the commissions on the sale, necessary expenditures to complete the houses, and the debt secured by the deed of trust.

Mrs. Gianpa, in her cross-examination with reference to this conveyance, said: "All I know is that he (Nathan Levin) was supposed to take our deed to our property. He had done that before. He had lots of our buildings in his people's names. They were our houses but still in some of his client's names or for people that worked for him." She also testified that she was assured by Levin that the deed "was for our protection. * * * It was to protect us against creditors or anybody else." When Richard Gianpa heard that the property had been advertised for sale under the deeds of trust, he told Levin that all of their interest had been conveyed to the Wagmans and that a foreclosure was not necessary, to which Levin replied: "I will foreclose and wipe out your creditors at fifty cents on the dollar." He also testified that he was advised by Levin not to pay any of his creditors and not to go to court.

Nathan Levin testified that before he made the $15,000 loan he knew that the Gianpas had conveyed the property to Alinon to avoid payment of a claim for $60,000 asserted against them. He also knew that the Gianpas owned the controlling interest in Alinon and regarded them as one and the same. His explanation of why he caused Alinon to convey the property to his son-in-law and daughter, was: "We took the deed for our protection; any good business man would have done that * * *. We had $43,500.00 in the property at that time. We figured the best thing for us to do was to get the title in us where we could control the real estate. We wanted to be able to * * * get our sales commissions because then he couldn't run to someone else and sell the houses. The houses had to be sold by the Colonial Investment Company."

The evidence conclusively proves that (1) Nathan Levin knew that the Gianpas owned and controlled Alinon; (2) they executed the deed conveying the property in question to Alinon, without consideration, and with intent to hinder, delay and defraud their creditors; (3) notwithstanding notice of this fraudulent intent, he obtained a deed of trust from the corporation to

secure E. E. Matthews the payment of the sum of $15,000, and shortly thereafter required the corporation to convey, without consideration, all of its real estate to his daughter and son-in-law, by deed absolute on its face, but upon a secret trust for his own benefit and for the benefit of the Gianpas and Alinon. Appellant used the names of Matthews and the Wagmans as straw men, and as a part of a fraudulent scheme to prevent the creditors of the Gianpas from subjecting the property to the payment of their debts.

The second assignment of error is based upon the refusal of the trial court to hold that the twelve items,* aggregating $7,382.01, were secured claims under the four deeds of trust on the four lots.

█ Appellant contends that payment of some of these items was secured by convenants in the deeds of trust, and others by the provisions of Code, sec. 55-59. The statute provides: "Every deed of trust to secure debts, * * * except so far as may be therein otherwise provided, shall be construed to impose and confer upon the parties thereto" certain enumerated obligations. These provisions of the statute are controlling when the deeds of trust do not otherwise provide. The deeds of trust were not made a part of the record, and, therefore, we cannot determine whether the claims were secured under the provisions of the statute or covenants in the deeds of trust. The commissioner examined the deed books in the Clerk's office where the deeds of trust were recorded, and held that the items were not secured claims either under the covenants of the deeds of trust or under the provisions of the statute. There is no evidence before this

---

| *"Insurance | $ 151.10 |
| Check to Starleaf & Sanden (drawn but not delivered).... | ·206.00 |
| Accrued interest (as of 11/5/48) | 2,100.00 |
| Commission on loans | 2,159.86 |
| Trustees Notices of Sale | 44.96 |
| Attorneys fee | 500.00 |
| One-half Trustees Commission | 712.25 |
| 1948 taxes | 12.44 |
| Certain 'guaranteed accounts' | |
| National Brick Co | 292.00 |
| Miller Building Co | 720.00 |
| Sodding and Planting | 75.00 |
| Alexandria Iron Works | 408.40 |
| | $7,382.01 |

court tending to show that the ruling of the trial court, affirming this part of the commissioner's report, is incorrect.

Appellant's third and fourth assignments of error are based upon the action of the court in rendering two judgments against the Gianpas, one for $15 in favor of Sidney R. Johnston, and the other for $1,300 in favor of J. H. and O. V. Carper. The only ground upon which objection is made to the entry of these judgments is that William T. Finley, "an attorney not of record" for the Gianpas, acknowledged service of process in the Johnston case, and consented to the entry of the judgment in the Carper case. The record refutes this contention. It clearly shows that on February 8, 1949, William T. Finley accepted notice to take depositions as attorney for Richard Gianpa and Katie M. Gianpa. As such attorney, he appeared before the commissioner and examined, and cross-examined, witnesses in behalf of his clients. No objection was made, or exception taken, to the entry of these judgments in the trial court. Even if there had been, the objection should have been overruled, because the record clearly shows that the Gianpas made a general appearance in person and by William T. Finley, their attorney.

We find no reversible error in any of the rulings of the trial court, and affirm the decree.

*Affirmed.*