## Wytheville

UNITED STATES OF AMERICA V. WM. R. TRIGG CO.

June 13, 1912.

Reheard June 12, 1913.

1. APPEAL AND ERROR—*Res Judicata—Second Appeal—Expression not Necessary to First Decision.*—What was decided in a case pending on appeal is not open to reconsideration in the same case on a second appeal upon similar facts. The first decision is the law of the case and must control its disposition; but this rule does not apply to expressions of opinion on matters, the disposition of which was not required for the decision, and certainly not to matters which were neither mentioned nor necessary to be considered.

2. UNITED STATES—*Contractural Powers—Exemption From Registry Laws of State.*—The United States, as an incident of its sovereignty, has capacity to contract co-extensive with the duties and powers of government, and this power carries with it complete exemption from all obligation to comply with state registry laws. It is not necessary for it to comply with the registry laws of the State in order to preserve a lien created by contract with it. The lien, without recordation, simply takes its place, and is superior to the claim of all other creditors who have no prior lien.

ON A REHEARING.

3. *Res Judicata.*—The present controversy between the United States and the general creditors of the Wm. R. Trigg Co., with respect to the vessels "Mohawk" and "Galveston," is not *res judicata* by reason of prior decisions of this court or of the Supreme Court of the United States.

Appeal from a decree of the Chancery Court of the city of Richmond. The United States appeals from an adverse decision in a controversy between it and other creditors over a fund under the control of the court.

*Reversed.*

The opinion states the case.

*L. L. Lewis, R. H. Talley* and *D. Lawrence Groner,* for the appellant.

*Munford, Hunton, Williams & Anderson, E. P. Cox, T. C. Gordon, Jordon Leake, Jo. Lane & Carry Ellis Stern, George Bryan* and *Coke & Pickrell,* for the appellees.

HARRISON, J., delivered the opinion of the court.

This case has several times been before this court, the last time under the style of *Hawes & Co.* v. *Wm. R. Trigg Co.,* 110 Va. 165, 65 S. E. 538, which was on appeal reviewed by the Supreme Court of the United States under the style of *"United States* v. *Ansonia Brass & Copper Co.,* 218 U. S. 452, 54 L. Ed. 1107, 31 Sup. Ct. 49.

At the time these insolvency proceedings were instituted against the appellee company, there were three vessels, for the United States, in process of construction at its shipyard at Richmond, Va., namely, a sea-going suction dredge for the War Department, called the "Benyuard," a revenue cutter for the Treasury Department, called the "Mohawk," and a cruiser for the Navy Department, called the "Galveston." In the progress of this litigation it has been finally decided by the Supreme Court that the "Benyuard" belonged to the United States, and that it was not liable for the debts of the appellee. All controversy as to this vessel is, therefore at an end, and it is no longer involved in this suit.

It has also been finally settled by this court in *Hawes & Co.* v. *Trigg Co., supra,* and affirmed by the Supreme Court in *United States* v. *Ansonia Brass and Copper Co., supra,* that, as between the United States and the supply lien creditors of the Wm. R. Trigg Company, the latter had

priority of lien upon the "Mohawk" and the "Galveston." Since the final settlement of that question the supply lien creditors have all been satisfied.

The present controversy involves the right of the United States to preference over the general creditors of the Wm. R. Trigg Company in favor of certain contractual liens held by them against the "Mohawk" and the "Galveston."

These two vessels were built by the Trigg Company under contracts with the United States, which provided for a lien upon each vessel in favor of the government for all moneys advanced by it on account thereof during the progress of the work. At the time of the appointment of the receiver, these vessels were in course of construction and the government had made large payments upon each, and it is for the satisfaction of these contractual liens that the appellants now insist that they are entitled to priority over the claims of the general creditors of the William R. Trigg Company. The existence of these contractual liens in favor of the government has been recognized throughout this litigation. It is, however, contended by the appellees that these liens cannot be given preference over the general creditors of the Trigg Company, because the United States has failed to comply with the Virginia registry laws by having the contracts reserving such liens recorded. It is further insisted that this court has held, in *Hawes & Co.* v. *Trigg Co., supra.* which decision has been affirmed in that respect by the Supreme Court in *United States* v. *Ansonia Brass, &c., Co., supra,* that these contractual liens in favor of the appellants against the "Mohawk" and the "Galveston" are invalid and cannot be enforced as against the appellees because unrecorded, and that, therefore, the question of the validity of such liens, so far as the general creditors are concerned, is *res judicata;* and, further, that if the question of the validity of such liens has not been already finally decided in this litigation adversely to the United States, it must now be so decided.

An examination of the record and the opinion of this court on the former appeal in the case of *Hawes & Co.* v. *Trigg Co., supra,* shows very clearly that the question now raised between the United States and the general creditors of the Trigg Co. was not considered or intended to be dealt with at that time.  The only questions then under consideration were those dealt with in determining the controversy between the supply lien creditors of the Trigg Co. and the United States.  Nowhere in the elaborate petition for appeal in that case is there mention of any creditors save the supply lien creditors.  It is true that one of the grounds relied on in the support of the priority of claim in favor of the supply liens was that the contractual liens in favor of the United States were void as to creditors under the recordation statute of the State, but that question was not even mentioned in the decision of the case.  The court very clearly and succintly states the question to be determined by it in these words:

"The question decided by the lower court and presented on this appeal is whether title to these several vessels was in the government or the Trigg Company, and, if in the latter, have its creditors who have sued out and caused to be recorded, in accordance with the labor and supply lien statute of the State, claims for supplies furnished the Trigg Company above referred to, priority of right to satisfaction over the rights of the government in the said vessels."

After carefully considering the case as stated, the court announced its conclusion, that the supply lien creditors were entitled to priority over the contractual liens of the government, not because the United States had failed to record their contractual liens, but because, as clearly shown by the provisions of the contracts reserving those liens, it was intended that they should be inferior to the supply liens.  On appeal the Supreme Court took this view, and affirmed the decision of this court as to the "Mohawk" and the "Galveston."

The Virginia recording acts were not mentioned in the opinion of this court or in that of the Supreme Court, and it cannot be presumed that either court intended to decide such a far-reaching and important question as that the contracts of the United States are subject to State registry statutes, without even mentioning the subject, especially when it is clear that the decision of so vital a question was not necessary to a disposition of the controversy then before the court.

Certain expressions in the opinion of this court are relied on as tending to show that the intention was to hold that the contractual liens in favor of the United States were not superior to the claims of the general creditors. The expressions relied on are wholly insufficient to justify the use that is sought to be made of them. It is manifest from the whole opinion that the court at no time had any such question in its mind.

As said by Mr. Justice Field in *Barney* v. *Winona, &c., R. Co.,* 117 U. S. 228, 29 L. Ed. 858, 6 Sup. Ct. 654: "We recognize the rule, that what was decided in a case pending before us on appeal is not open to reconsideration in the same case on a second appeal upon similar facts. The first decision is the law of the case and must control its disposition; but the rule does not apply to expressions of opinion on matters, the disposition of which was not required for the decision."

Looking to the whole record, including the decision of this court and that of the Supreme Court on the former appeal, we are of opinion that the lower court erred in holding the question presented by this appeal to be *res judicata.*

That question, which will now, for the first time, be considered and decided by this court in this litigation, involves the right of the United States, by virtue of its contractual liens upon the "Mohawk" and the "Galveston" to priority, as to those vessels, over the general creditors of the

Wm. R. Trigg Company. In other words, are the United States bound to comply with the State registry laws and have their contracts recorded in order to make effective and available the liens reserved in such contracts, as against those who have no liens?

In the light of the decisions of the Supreme Court of the United States, it is clear that this question must be answered in the negative.

In *United States* v. *Maurice,* 2 Brock 96, Fed. Cas. No. 15,747, Chief Justice Marshall decided, as the Supreme Court of the United States in subsequent cases has repeatedly held, that the power of the Federal government to contract is one of the means necessary to accomplish the objects for which the government was established, and that this capacity to contract is co-extensive with the duties and the powers of government. No power, indeed, is more essential to the maintenance of the government. A different principle would involve a denial of the ordinary rights of sovereignty. *United States* v. *Tingey,* 5 Peters 115, 8 L. Ed. 66; *United States* v. *Bradley,* 10 Peters 343, 9 L. Ed. 448; *Van Brocklin* v. *State of Tennessee,* 117 U. S. 151, 29 L. Ed. 845, 6 Sup. Ct. 670; *Moses* v. *United States,* 166 U. S. 571-586, 41 L. Ed. 1119, 17 Sup. Ct. 682.

This power to contract, which is an incident of the sovereignty of the United States and is, as stated by Judge Marshall co-extensive with the duties and powers of government, carries with it complete exemption of the government from all obligation to comply with State registry laws, for the reason that it would grievously retard, impede and burden the sovereign right of the government to subject it to the operation of such laws. *Dollar Savings Bank* v. *United States,* 19 Wall. 227, 22 L. Ed. 80; *Stanley* v. *Schwalby,* 147 U. S. 508, 37 L. Ed. 259, 13 Sup. Ct. 418; *United States* v. *Snyder,* 149 U. S. 210, 37 L. Ed. 705, 13 Sup. Ct. 846.

If the States had the power to interfere with the operations of the Federal government by compelling compliance on its part with State laws, such as the registry statutes, then, in the language of the Supreme Court, the potential existence of the government would be at the mercy of State legislation. *United States* v. *Snyder, supra,* 214.

Both the Supreme Court of the United States and this court have recognized these liens asserted by the United States against the "Mohawk" and the "Galveston" as valid contractual liens. As such they are superior to the claims of all creditors of the Trigg Company not having prior liens since, as seen, they are not affected by the fact that the contracts reserving them were not recorded; the United States being under no obligation to comply with the State registry laws.

The decree complained of must be reversed, and the cause remanded for further proceedings not in conflict with this opinion.

## ON REHEARING.

HARRISON, J., delivered the opinion of the court.

This petition for rehearing was granted solely for the purpose of having further argument upon the question, whether or not the present controversy between the Federal government and the general creditors of the Wm. R. Trigg Co. with respect to the vessels "Mohawk" and "Galveston," had been previously decided adversely to the government and in favor of the general creditors, and was, therefore, as to this appeal *res judicata.*

This court by its opinion rendered on the 13th day of June, 1912, held that this question was not *res judicata.* In the opinion then handed down we said: "An examination of the record and the opinion of this court on the former appeal in the case of *Hawes & Co.* v. *Trigg Co.,*

*supra,* shows very clearly that the question now raised between the United States and the general creditors of the Trigg Company was not considered or intended to be dealt with at that time. The only questions then under consideration were those dealt with in determining the controversy between the supply lien creditors of the Trigg Company and the United States."

The present argument, which has been given due consideration, has confirmed us in the conclusion that neither the opinion of this court in *Hawes & Co.* v. *Trigg Co.,* 110 Va. 165, 65 S. E. 538, nor that of the Supreme Court in *United States* v. *Ansonia Brass and Copper Co.,* 218 U. S. 452, 31 Sup. Ct. 49, 54 L. Ed. 1107, decided or intended to decide any question between the United States and the general creditors of the Wm. R. Trigg Co. The rights of such general creditors were not in issue in the case of *Hawes & Co.* v. *Trigg Co., supra,* were not presented on that appeal, were not necessarily involved therein and were in no way considered or affected by that decision, or by the decision, affirming the same, of the Supreme Court in *U. S.* v. *Brass & Copper Co., supra.* The questions involved in the present appeal have been fully dealt with in the opinion of this court handed down June 13, 1912, and the decree then pronounced by this court must, for the reasons there given, be adhered to.

*Reversed.*