# 𝔖taunton

THE FEDERAL LAND BANK OF BALTIMORE V. CLINCHFIELD
LUMBER AND SUPPLY COMPANY.

September 9, 1938.

Present, All the Justices.

The opinion states the case.

*I. P. Whitehead, Peyton G. Jefferson, William Beasley* and *Lloyd M. Robinette,* for the appellant.

*Fred B. Greear* and *I. A. Beauchamp,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

This is an equity suit to enforce a mechanic's lien. The facts are not in dispute. In April, 1935, the Clinchfield Lumber and Supply Company (hereinafter called the Supply Company) furnished certain materials used in the construction of a dwelling which A. B. Bays erected on a 73.3-acre farm owned by him in Wise county. The sum of $318.78, the greater part of the price of these materials so furnished, was unpaid, and in due time the Supply Company filed a mechanic's lien on the building and the entire tract of land to secure the payment of the balance due to it.

More than five years prior to the time the materials were furnished and the building was erected, there was recorded in the clerk's office of Wise county a mortgage on the entire tract of 73.3 acres of land from Bays' predecessor in title. This mortgage secured to the Federal Land Bank of Baltimore (hereinafter called the Bank) an indebtedness of $1,400, which has not yet matured.

The mechanic's lien being unsatisfied, within the time prescribed by statute the Supply Company filed its bill in equity against Bays and others to enforce its lien. The Bank was made a party defendant to the bill and filed an answer praying that the priority of its lien on the land be preserved, and objecting to any sale of the property unless it be subject to the mortgage lien. The answer further alleged—and it is an agreed fact—that the said materials had been furnished and the building had been constructed without the knowledge or consent of the Bank.

In a preliminary decree the court overruled the contention of the Bank and held that the mechanic's lien creditor was

entitled to have a sale of the building and so much land therewith as was necessary for its convenient use and enjoyment. The cause was then referred to a commissioner in chancery with directions to report what quantity of land was necessary for the convenient use and enjoyment of the building, the value of this part of the land, the value of the said building, the liens on the land and building, and their relative priorities.

The commissioner reported that 1.71 acres of land, together with "the right and privilege of free ingress and egress over a roadway now used by A. B. Bays and others, leading from the 1.71-acre tract to the public road as now located, or as it may be hereafter located," was necessary for the convenient use and enjoyment of the building. He also reported that the value of this 1.71 acres of land was $40, and that the value of the building thereon, exclusive of the land, was $460.

The commissioner likewise found that delinquent taxes for several years were a first lien on the entire tract of 73.3 acres; that the mortgage held by the said bank was the next lien; and that eight judgments, in the order in which they were docketed, were the next liens on the land. The mechanic's lien was reported as the next lien on the land, but a first lien against the dwelling erected thereon. No exceptions were filed to these items reported by the special commissioner; consequently his report was confirmed.

The court then decreed that the building and the 1.71 acres of land be sold; that the purchaser "should be decreed a right and privilege of free ingress and egress over the roadway now used by A. B. Bays and others, leading from the 1.71-acre tract to the public road as now located, or as it may be hereafter located." It was further decreed that out of the proceeds of the sale the sum of $40, representing the appraised value of the 1.71 acres of land, after the deduction of the proportionate part of the total amount of delinquent taxes on the entire tract of 73.3 acres, should be paid to the bank as the holder of the first lien on the land;

and that the balance of the proceeds of sale, after deducting the costs of this suit, should be paid to the mechanic's lien creditor.

From this decree the Bank has appealed. It earnestly insists that its mortgage was properly recorded; that it is a prior lien on the entire tract of 73.3 acres; that the mortgage contains no stipulation for a release of any portion of the property thereby covered upon the payment of a part of the debt secured; that the debt is not due; and that the mortgagee does not desire a foreclosure of its lien on the entire tract or any portion thereof. Consequently, it says, the sale of the 1.71-acre tract of land, together with the right of way leading from the building to the public road, found necessary for the convenient use of the building, should be made subject to the lien of the mortgage, and not free thereof as the court has decreed.

█ We think the position of the Bank is unquestionably sound. While Code, section 6426, gives to the supply man, who perfects his lien within the prescribed time and in the proper manner, a lien upon the building "and so much land therewith as shall be necessary for the convenient use and enjoyment thereof," this section must be read in connection with Code, section 6436, which deals with conflicting liens on the land affected.

The material portion of section 6436 reads as follows: "If the person who shall cause such building or structure to be erected or repaired owns less than a fee simple estate in such land, then only his interest therein shall be subject to said liens. No lien or encumbrance upon the land created before the work was commenced or materials furnished shall operate upon the building or structure erected thereon, or materials furnished for and used in the same, until the lien in favor of the person doing the work or furnishing the materials shall have been satisfied; nor shall any lien or encumbrance upon the land created after the work was commenced or materials furnished operate on the land, or such building or structure, until the lien in favor of the person doing the work or furnishing the materials shall

have been satisfied. And in the enforcement of the liens acquired under the previous sections of this chapter, any lien or encumbrance created on the land before the work was commenced or materials furnished shall be preferred in the distribution of the proceeds of sale only to the extent of the value of the land estimated, exclusive of the buildings or structures, at the time of sale, and the residue of the proceeds of sale shall be applied to the satisfaction of the liens provided for in the previous sections of this chapter."

■ Commenting on the section just quoted, Burks' Pleading and Practice (3d Ed.), sec. 448, p. 834, says: "Where the lien was created on the land *before the work was begun,* or the materials were furnished, it is the first lien on the land, and the second lien on the building or structure, * * *."

See also, 1 Minor on Real Property (2d Ed.), sec. 694, pp. 906-7; *Fidelity Loan & Trust Co.* v. *Dennis,* 93 Va. 504, 25 S. E. 546; *Hudson* v. *Barham,* 101 Va. 63, 43 S. E. 189, 99 Am. St. Rep. 849.

■ Before the materials were furnished the entire tract of 73.3 acres of land was covered by a first lien mortgage. When the Supply Company perfected its mechanic's lien, the latter became a first lien on the building only, while the mortgage continued to be a first lien on the land, including the 1.71 acres on which the building is located. The mechanic's lien became a lien on the 1.71 acres of land, but subject to the lien of the mortgage thereon. The mortgage became a second lien on the building itself. In other words, so far as these two liens were concerned, the mortgage was a first lien on the land and a second lien on the building, while the mechanic's lien was a first lien on the building and a second lien on the land.

■ By the terms of the mortgage the mortgagee, in return for the loan which it had made to the owner of the property, obtained valuable rights. Among these was the right to hold and to look to each and every part of the tract of 73.3 acres of land as security for its entire debt, and the right to look to the mortgage debtor for the payment of the

debt secured according to the terms of the instrument. When the mechanic's lien was perfected, it became a lien on the 1.71 acres of land, but subject to all of the rights which the mortgagee had acquired.

It is admitted that there is no provision in the mortgage for the release of any portion of the land thereby conveyed upon the payment of a proportionate part of the debt secured. Nor is there any provision in the mortgage or in the note thereby secured which permits the debtor to pay the instalment of $40, which the court has decreed the mortgagee must accept.

It is clear, therefore, that Bays, as the owner of the land, has no right to tender to the mortgagee the estimated value of the tract of 1.71 acres of land and demand a release of the mortgage thereon.

Neither do we think that the Supply Company, as the holder of the inferior lien, has any such right. Certainly, Code, section 6436, contains no express language which authorizes this to be done. Nor do we think that such is within the implied intent of this section.

We have been cited to no authority which supports the contention of the mechanic's lien creditor, nor have we been able to find any. *Fidelity Loan & Trust Co.* v. *Dennis, supra,* involved the sale of the whole and not a part of the mortgaged property. It dealt with the relative priorities of a deed of trust and a mechanic's lien. In *Hudson* v. *Barham, supra,* the mortgage debt was due and the property was being advertised for sale under the first lien. This court held that such sale should not be had until the relative values of the land and the buildings had been fixed and the priorities of the liens had been ascertained. In neither of these cases did the prior lien creditor object to the sale.

*Central Lumber Co.* v. *Jacks,* 222 Ala. 475, 132 So. 721, dealt with a situation similar to that in the instant case. There a mechanic's lien was filed on a building erected on a tract of 156 acres of land. The land was covered by a prior purchase-money mortgage. The Alabama statute is

similar to ours in that the mechanic's lien is a first lien on the building and a second lien on the land covered by a prior mortgage. In that case the mechanic's lien creditor was denied the right to have one acre of land on which the building was located sold, and to compel the mortgagee to accept, on account of the mortgage debt, the value of the one acre of land. The court permitted the mechanic's lien creditor to remove the building from the land under the peculiar provisions of the Alabama statute, but it left unimpaired the prior purchase-money mortgage.

To support the contention of the mechanic's lien creditor under the circumstances of the instant case would, we think, amount to a very material modification of the mortgage contract, which had been made and recorded more than five years prior to the creation and existence of the mechanic's lien. It might logically lead to a complete destruction of the mortgage contract. It would enable the mortgagor to do indirectly what he could not accomplish directly. He might select the most valuable part of the mortgaged land, erect a building thereon, default in the payment of the purchase price of the materials, force a sale, free of the mortgage lien, of that portion of the land necessary to the use and enjoyment of the building, and compel the mortgagee to accept the estimated value of that part of the land sold. The sale of a portion of the tract covered by the mortgage might very seriously impair the value of the residue. This procedure might be repeated, and the prior lien creditor would be helpless to avoid it unless he paid the debt or debts contracted for the materials and for which he was in no way responsible.

Furthermore, the lower court has decreed that the land should be sold with the right of ingress and egress over certain of the other land covered by the mortgage. If that decision is sound it might logically follow that, as a result of successive improvements and sales under mechanics' liens, the residue of the mortgaged land might be covered with a net work of rights of way, if, indeed, there would eventually

be left any of the land as security for the balance of the mortgage debt.

To uphold principles which might lead to such results would, we think, impair the value of mortgages on unimproved property to such an extent as to make it practically impossible to obtain a loan on unimproved land. Indeed, the stability of even a purchase-money mortgage on unimproved land would be so hazardous as to be of doubtful value.

We do not think that the mechanics' lien laws of this State were intended to permit such results.

■ It is our opinion that the trial court erred in decreeing the sale of the 1.71 acres of land, with the right of way leading from the building to the public road, free and clear of the lien of the mortgage. This property should be sold subject to the prior mortgage lien.

We are not unmindful of the fact that the conclusion which we have reached may result in a loss to the Supply Company. But this is a situation for which the Bank is in no way responsible and which the Supply Company could easily have avoided. An examination of the records would have disclosed the recorded mortgage and the several judgments docketed against Bays, all of which were liens on the land. The Supply Company should have known that under these circumstances a mechanic's lien would furnish little or no security for its claim. It had the option, then, of not selling the materials to Bays, or else requiring payment from him in cash.

The decree must be reversed and the cause remanded for further proceedings in conformity with these views.

*Reversed and remanded.*