**W. T. JONES AND COMPANY**, Incorporated, and Noland Company, Inc., and Marvin Moseley, Appellants,

v.

**FOODCO REALTY, INC.**, et al., and United States of America, Appellees.

No. 8824.

United States Court of Appeals Fourth Circuit.

Argued Jan. 8, 1963.

Decided May 21, 1963.

Arthur B. Davies, III, Lynchburg, Va. (Hickson & Davies and Joseph L. Lyle, Jr., Lynchburg, Va., on brief), for appellants.

Lawrence C. Musgrove, Asst. U. S. Atty. (Robert Kaplan, Preston L. Campbell and William E. Nelson, Attys., Dept. of Justice, on brief), for appellee United States.

Before SOBELOFF, Chief Judge, and BOREMAN and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Chief Judge.

When the Small Business Administration has joined a private bank in making a construction loan secured by a recorded deed of trust and the borrower becomes insolvent, is the SBA's interest in the unpaid balance of the loan subordinate to mechanic's liens accorded priority over deeds of trust by state law? Under the circumstances of this case we

think that the mechanic's liens are not entitled to priority over the Government's claim.

The facts are undisputed. Since these are set forth in meticulous detail in the District Court's opinion, 206 F.Supp. 878, only those which are pertinent to this appeal will be repeated here.

In August of 1959, Foodco Realty, Inc., a newly-organized corporate owner of land situated in Campbell County, Virginia, sought a construction loan of $85,000 from the Campbell County Bank in order to finance plant and warehouse improvements. The bank was unwilling to enter into the transaction by itself and called in the Small Business Administration, an agency of the United States vested with broad power to join private lenders in making loans to small business concerns otherwise unable to obtain necessary funds for capital improvements.[1] The SBA formally agreed to put up 90% of the loan, the maximum percentage authorized by Congress, and the bank assumed the balance. Foodco promptly executed a note which, though payable to the bank alone, on its face disclosed participation by the SBA. The note was secured by a deed of trust on Foodco's property, which was recorded on August 13, 1959. Construction began eight days later but by the time the work was finally completed the following April, Foodco was insolvent in the sense that its debts exceeded its assets.

Appellants, who had furnished labor and materials, filed proper mechanic's liens within the sixty-day period required by Code of Va. § 43–4. On November 10, 1960, one of the appellants, W. T. Jones and Company, initiated proceedings in the Circuit Court of Campbell County to enforce its mechanic's lien. While the suit was pending, several judgments were entered against Foodco in favor of other, non-lien creditors, all of which remain unsatisfied. Meanwhile the bank assigned to the United States its 10% fractional interest in the note secured by the deed of trust in consideration for a promise by the United States to turn over 10% of any recovery upon the note. Thereupon the United States, on its motion, was permitted to intervene as a party defendant in the state lien enforcement action and to remove it to the United States District Court for the Western District of Virginia. That court in turn referred the case to a special master.

The master found that the deed of trust securing the SBA's interest in the loan was prior in time to appellants' mechanic's liens and therefore entitled to priority to the extent that it encumbered Foodco's property as it existed before the improvements were added by the mechanics.[2] However, the master was also of the opinion that since the SBA was claiming under a Virginia deed of trust which incorporated by reference

1. 15 U.S.C.A. § 631 et seq. (Small Business Act of 1953, as amended). The overall objectives secured by this legislation have been summarized by the Supreme Court, as follows:

"The Small Business Act of 1953 created the Small Business Administration to 'aid, counsel, assist, and protect insofar as is possible the interests of small-business concerns in order to preserve free competitive enterprise * * * and to maintain and strengthen the overall economy of the Nation.' The Administration was given extraordinarily broad powers to accomplish these important objectives, including that of lending money to small businesses whenever they could not get necessary loans

on reasonable terms from private lenders. When a part, but not all, of a necessary loan can be obtained from a bank or other private lender, the Administration is empowered to join that private lender in making the loan." Small Business Administration v. McClellan, 364 U.S. 446, 447, 81 S.Ct. 191, 193, 5 L.Ed.2d 200 (1960).

2. The special master found, and it is generally conceded, that the land and original improvements existing at the time of the loan had a value of $25,500. The improvements thereafter placed on Foodco's property by the mechanics added $54,500 to the value of the property, bringing the total valuation to $80,000.

certain provisions of state law [3] and which secured a loan to be applied exclusively to building improvements, the SBA's claim to preference would be governed by the Virginia mechanic's lien priority statute.[4] By operation of this statute the SBA would take a first lien on the land but only a second lien, inferior to that of the mechanics, on the buildings.[5] Thus the master accorded priority to the appellants to the extent of the value of the structural improvements placed by them upon the debtor's property after recordation of the deed of trust.

On objections filed by the United States, the District Court reviewed and overruled the special master's report. The court did not question the master's interpretation of the Virginia lien priority statute [6] but held that "federal common law," by which "the first in time is the first in right," prevails over state law in matters affecting the priority of claims of the United States; therefore, the claim of the SBA having originated first in point of time, enforcement of the mechanic's liens would be postponed, notwithstanding their preferred status under Virginia law, until the entire unpaid balance of the loan had been satisfied out of the debtor's assets.

The court also ruled in the alternative that even if "federal common law" was inapplicable, the debt owing to the United States would be in any event paramount to the mechanic's liens by virtue of the federal insolvency statute,[7] but that on that theory the SBA's priority would not extend to the portion of the debt assigned to it by the participating bank. The court's order, however, awarded the SBA full priority on the "federal common law" theory. From this order the appellant mechanics appeal.[8]

## I. The FEDERAL INSOLVENCY STATUTE (31 U.S.C.A. § 191)

Turning first to the federal insolvency statute, 31 U.S.C.A. § 191 (Rev.Stat. § 3466), we agree with the District Court that its provisions squarely apply to the instant case. The following language

---

3. The deed made reference to Code of Va. §§ 55–59 and 55–60, which relate to the construction of Virginia deeds of trust and provide for foreclosure procedures in case of default. It does not appear that these two Code sections affect the determination of lien priorities, but merely define certain language employed in the deed of trust. Even if the deed had contained no specific reference thereto, these statutes would nevertheless govern its construction. Colonial Investment Co. v. Cherrydale Cement Block Co., 194 Va. 454, 73 S.E.2d 419, 424 (1952).

4. Code of Va. § 43–21: "No lien or encumbrance upon the land created before the work was commenced or materials furnished shall operate upon the building or structure erected thereon, * * * until the lien in favor of the person doing the work or furnishing the materials shall have been satisfied * * *." See Rust v. Indiana Flooring Co., 151 Va. 845, 145 S.E. 321 (1928), wherein it was held that the beneficiary of a prior recorded deed of trust is subordinated to the holders of subsequent mechanic's liens to the extent that the value of the property is increased by improvements. See also Dewitt v. Coffey, 150 Va. 365, 143 S.E.

710 (1927). From these cases the conclusion has been drawn that "there is no way that a person may lend money so that he will have priority over mechanics liens, where the money is to be used for the construction of a building." 12 Michie's Jurisprudence, Mechanics Liens, § 39 (1950).

5. Federal Land Bank v. Clinchfield Lumber & Supply Co., 171 Va. 118, 198 S.E. 437, 439 (1938); Fidelity Loan Co. v. Dennis, 93 Va. 504, 25 S.E. 546 (1896).

6. That the special master correctly construed the Virginia mechanic's lien priority statute is here conceded by the United States.

7. 31 U.S.C.A. § 191 (Rev.Stat. § 3466).

8. Neither party to this appeal takes exception to the District Court's order "that the real estate taxes assessed against the subject property have priority over all other liens against the property." The SBA's interest is specifically subordinated to the State's lien for property taxes by 15 U.S.C.A. § 646. But beyond this concession the statute does not go. Cf. United States v. Emory, 314 U.S. 423, 430, 62 S.Ct. 317, 86 L.Ed. 315 (1941).

is here relevant: "Whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied; and the priority established shall extend * * to cases in which an act of bankruptcy is committed."

The manifest purpose of the statute, in force since 1797 without significant modifications,[9] "is simply to protect the interest of the Government in collecting money due to it" where the property of an insolvent debtor is involved. Small Business Administration v. McClellan, 364 U.S. 446, 451–452, 81 S.Ct. 191, 195–196, 5 L.Ed.2d 200 (1960). Its command is that the United States shall be accorded an absolute priority over the claims of all general lienholders, Massachusetts v. United States, 333 U.S. 611, 625–627, 68 S.Ct. 747, 92 L.Ed. 968 (1948), even though its own lien is general and notice thereof has not been properly filed and recorded. United States v. City of New Britain, 347 U.S. 81, 84–85, 74 S.Ct. 367, 98 L.Ed. 520 (1954); United States v. Gilbert Associates, Inc., 345 U.S. 361, 366, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); United States v. Texas, 314 U.S. 480, 488, 62 S.Ct. 350, 86 L.Ed. 356 (1941); United States v. Emory, 314 U.S. 423, 427–429, 62 S.Ct. 317, 86 L.Ed. 315 (1941).[10] As applied to the present facts, it would seem immaterial that the deed of trust is silent as to the SBA's lien interest, inasmuch as beneficial ownership of nine-tenths of the debt so secured concededly accrued to the United States [11] immediately upon execution of the note evidencing the joint loan. Cf. Small Business Administration v. McClellan, 364 U.S. 446, 450, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960); United States v. Emory, 314 U.S. 423, 430, 62 S.Ct. 317, 86 L.Ed. 315 (1941). Nor is any question raised as to the special master's express finding that Foodco is insolvent and that its insolvency arose while construction was in progress and before the mechanic's liens were filed.

But, as appellants correctly point out, the mere inability of the debtor to pay his debts has never been regarded as sufficient to bring the United States within the protection of section 191. See United States v. Oklahoma, 261 U.S. 253, 260, 43 S.Ct. 295, 67 L.Ed. 638 (1923), and authorities cited therein. This brings us to the question whether Foodco has committed an "act of bankruptcy," as that term is defined by section 3, sub. a of the Bankruptcy Act (11 U.S.C.A. § 21, sub. a). Reference thereto discloses that this requirement is satisfied by the debtor's having "suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien within thirty days from the date thereof * * *." 11 U.S.C.A. § 21(a) (3). The record shows conclusively that, as early as November 29, 1960, and while insolvent, Foodco suffered a judgment against it in favor of one of

9. The minor differences in phraseology between the original and the present statute "did not work any change in the purpose or meaning * * *." Price v. United States, 269 U.S. 492, 501, 46 S.Ct. 180, 181, 70 L.Ed. 373 (1926). See also Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 370, 67 S.Ct. 340, 91 L.Ed. 348 (1946); United States v. Emory, 314 U. S. 423, 428, 62 S.Ct. 317, 86 L.Ed. 315 (1941).

10. See also United States v. William R. Trigg Co., 115 Va. 272, 78 S.E. 542 (1913), upholding unrecorded contractual liens of the United States as against the priority claims of general creditors. The Supreme Court of Appeals of Virginia was of the opinion that the United States need not comply with the State's registry laws in order to perfect its claim. And see United States v. City of Greenville, 118 F.2d 963, 965 (4th Cir., 1941).

11. There can be no question that the SBA is an agency of the United States, rather than a separate legal entity, for purposes of "the debts due to the United States" clause of § 191. Small Business Administration v. McClellan, 364 U.S. 446, 448–450, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960); Cf. United States Dept. of Agriculture, etc. v. Remund, 330 U.S. 539, 541–542, 67 S.Ct. 891, 91 L.Ed. 1082 (1947).

its creditors pursuant to legal proceedings in the Circuit Court of Campbell County. This, as well as later judgments recovered by other creditors in January and May, 1961, was duly docketed and constituted a lien on its property. Code of Va. §§ 8–386, 390 (1960 amend.). See Fooshee v. Snavely, 58 F.2d 772, 773 (W.D.Va.1931). Since each of these judgment liens was allowed to stand for more than thirty days, an act of bankruptcy was committed. In re Airmont Knitting & Undergarment Co., Inc., 182 F.2d 740, 741 (2d Cir., 1950); United States v. Williams, 139 F.Supp. 94, 97–98 (M.D.N.C.1956); 1 Collier on Bankruptcy, § 3.301 et seq.[12] Consequently, section 191 must be given controlling effect and the SBA's priority upheld.

Appellants resist this conclusion, contending that their mechanic's liens were duly perfected as a matter of state law and that section 191 does not operate against private liens which are specific and choate. The Supreme Court, however, has never actually held that specific and choate liens asserted by a private claimant are impliedly exempted from the operation of section 191. See United States v. Gilbert Associates, Inc., 345 U.S. 361, 365, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 370, 67 S.Ct. 340, 91 L.Ed. 348 (1946); United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 355, 65 S.Ct. 304, 89 L.Ed. 294 (1945); United States v. Texas, 314 U.S. 480, 485–486, 62 S.Ct. 350, 86 L.Ed. 356 (1941). On the contrary, it has adhered to the view that "in enacting § 3466 [31 U.S.C.A. § 191], Congress gave no indication whatever of intent to create defeasible priorities." Massachusetts v. United States, 333 U.S. 611, 627, 68 S.Ct. 747, 757, 92 L.Ed. 968 (1948). See also United States Dept. of Agri., etc. v. Remund, 330 U.S. 539, 544–545, 67 S.Ct. 891, 91 L.Ed. 1082 (1947); Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 370, 67 S.Ct. 340, 91 L.Ed. 348 (1946); Illinois ex rel. Gordon v. United States, 328 U.S. 8, 12, 66 S.Ct. 841, 90 L.Ed. 1049 (1946); United States v. Emory, 314 U.S. 423, 433, 62 S.Ct. 317, 86 L.Ed. 315 (1941). We are likewise inclined to doubt that any exception can be carved out of the sweeping language of section 191 which would allow an unforeclosed mechanic's lien, however labelled, to defeat the absolute priority secured to the United States by the statute.[13]

We do not reach this issue, however, for there is no showing that the mechanic's liens here asserted are sufficiently specific and choate to ward off the Government's priority claim.

---

12. It was unnecessary to show a "sale or other disposition" of Foodco's property. However, at one period a third act of bankruptcy (judgment lien) could only be spelled out by "an affirmative act of disposal, not a mere lapse of time which leaves the lien intact and still requiring enforcement." Citizens' Banking Co. v. Ravenna National Bank, 234 U.S. 360, 368, 34 S.Ct. 806, 809, 58 L.Ed. 1352 (1914). But, thanks to a 1926 congressional amendment abrogating the effect of that decision, it is now sufficient that the insolvent debtor sits idly by and fails to vacate or discharge the judgment lien during the thirty-day period. See Elkay Reflector Corp. v. Savory, Inc., 57 F.2d 161, 162 (2d Cir., 1932); 1 Collier on Bankruptcy, § 3.309.

13. Early decisions of the Supreme Court held that previously-executed mortgages on the property of an insolvent debtor, being in the hands of the mortgagee and not the debtor, were unaffected by subsequent claims under the federal insolvency statute. Thelusson v. Smith, 2 Wheat. 396, 426, 4 L.Ed. 271 (1817); Conard v. Atlantic Ins. Co., 1 Pet. 386, 441, 444, 7 L.Ed. 189 (1828); Brent v. Bank of Washington, 10 Pet. 596, 611, 9 L.Ed. 547 (1836); Cf. Savings & Loan Society v. Multnomah County, 169 U.S. 421, 428, 18 S.Ct. 392, 42 L.Ed. 803 (1898). But it is thought that these "original departures indeed did not contemplate that exceptions were being made." Massachusetts v. United States, 333 U.S. 611, 634, 68 S.Ct. 747, 760, 92 L.Ed. 968 (1948). See also United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 355, 65 S.Ct. 304, 89 L.Ed. 294 (1945); United States v. Texas, 314 U.S. 480, 484–485, 62 S.Ct. 350, 86 L.Ed. 356 (1941); New York v. Maclay, 288 U.S. 290, 294, 53 S.Ct. 323, 77 L.Ed. 754 (1933).

Even assuming, as the appellants insist, that the liens are choate as a matter of Virginia law,[14] such characterization by a state is far from conclusive. United States v. Acri, 348 U.S. 211, 213, 75 S.Ct. 239, 99 L.Ed. 264 (1955); United States v. City of New Britain, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954); United States v. Security Trust & Savings Bank, 340 U.S. 47, 49–50, 71 S.Ct. 111, 95 L.Ed. 53 (1950); Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 371, 67 S.Ct. 340, 91 L.Ed. 348 (1946); United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 357, 65 S.Ct. 304, 89 L.Ed. 294 (1945); cf. United States v. Buffalo Savings Bank, 371 U.S. 228, 229, 83 S.Ct. 314, 9 L.Ed.2d 283 (1963). We are instead bound to look to federal law, as announced by the Supreme Court, for the final answer. Aquilino v. United States, 363 U.S. 509, 514, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); United States v. Scovil, 348 U.S. 218, 220, 75 S.Ct. 244, 99 L.Ed. 271 (1955); United States v. Security Trust & Savings Bank, 340 U.S. 47, 49, 71 S.Ct. 111, 95 L.Ed. 53 (1950); Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 371, 67 S.Ct. 340, 91 L.Ed. 348 (1946); United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 357, 65 S.Ct. 304, 89 L.Ed. 294 (1945); United States v. Oklahoma, 261 U.S. 253, 260, 43 S.Ct. 295, 67 L.Ed. 638 (1923). See 1A Moore's Federal Practice, § 0.321. And the Court has made it abundantly clear that a competing lien cannot be considered specific and choate unless it has been "attached to certain property *by reducing it to possession,* on the theory that the United States has no claim against property no longer in the possession of the debtor." United States v. Gilbert Associates, Inc., 345 U.S. 361, 366, 73 S.Ct. 701, 704, 97 L.Ed. 1071 (1953) (italics added). See also Thelusson v. Smith, 2 Wheat. 396, 4 L.Ed. 271 (1817); New York v. Maclay, 288 U.S. 290, 293–294; 53 S.Ct. 323, 77 L.Ed. 754 (1933); United States v. Texas, 314 U.S. 480, 484–485, 62 S.Ct. 350, 86 L.Ed. 356 (1941); Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 373–377, 67 S.Ct. 340, 91 L.Ed. 348 (1946). Cf. United States v. Durham Lumber Co., 257 F.2d 570, 573–574 (4th Cir., 1958) (federal tax liens which do not reach property of bankrupt-taxpayer's debtor cannot extinguish mechanic's liens asserted againt property). Applying the same test to mechanic's liens and claims of a similar nature, recent decisions leave little room for doubt that the interim steps of filing and recording the lien, without obtaining a final judgment enforcing the lien against the property, serves "merely as a caveat of a more perfect lien to come."[15] United States v. Vorreiter, 355 U.S. 15, 78 S.Ct. 19, 2 L.Ed.2d 23 (1957) (prior recorded mechanic's lien); United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871 (1956) (same); United States v. Colotta, 350 U.S. 808, 76

14. The Virginia law does not necessarily compel such a conclusion. It is clear that an inchoate lien attaches when the work is done and which may be perfected by filing and recording it within sixty days thereafter. Code of Va. § 43–4. See Hadrup v. Sale, 201 Va. 421, 111 S.E.2d 405, 407 (1959); Wallace v. Brumback, 177 Va. 36, 12 S.E.2d 801, 803 (1941). But the mechanic's lien itself is not self-enforcing and is extinguished unless the lienholder files a bill in equity within six months, Code of Va. § 43–17, and obtains a decree against the debtor's property. Code of Va. § 43–22. It does not appear that the mere filing and recordation of the lien operates to divest the debtor of his property, as is required by the federal choate lien test. United States v. Gilbert Associates, Inc., 345 U.S. 361, 366, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 372–374, 67 S.Ct. 340, 91 L.Ed. 348 (1946).

15. The expression was coined by Justice Cardozo in New York v. Maclay, 288 U.S. 290, 294, 53 S.Ct. 323, 77 L.Ed. 754 (1933). See also United States v. Scovil, 348 U.S. 218, 220, 75 S.Ct. 244, 99 L.Ed. 271 (1955); United States v. Gilbert Associates, Inc., 345 U.S. 361, 366, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 359, 65 S.Ct. 304, 89 L.Ed. 294 (1945).

S.Ct. 82, 100 L.Ed. 725 (1955) (same); United States v. Hulley, 358 U.S. 66, 79 S.Ct. 117, 3 L.Ed.2d 106 (1958) (prior recorded materialman's lien); United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (1955) (landlord's distress lien); United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1945) (same). This is so even though the mechanic's lien has been filed in the manner prescribed by state law and foreclosure proceedings are in progress at the time the Government first asserts its priority. United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871 (1956). And see United States v. Bond, 279 F.2d 837, 844–845, 849 (4th Cir., 1960) (majority and dissenting opinions); United States v. Latrobe Construction Co., 246 F.2d 357, 365 (5th Cir., 1957). Therefore, absent any showing that the mechanic's liens have divested the debtor of either title or possession, United States v. Gilbert Associates, Inc., 345 U.S. 361, 366, 73 S.Ct. 701, 97 L.Ed. 1071 (1953), we perceive no basis for exempting appellants from the operation of section 191.[16]

## II. THE VIRGINIA PRIORITY STATUTE AND "FEDERAL COMMON LAW"

 The federal insolvency statute being applicable, it is dispositive of the entire case. In the first place, it was established long ago that state laws purporting to fix priorities among lienholders must yield to section 191 in any

nonbankruptcy insolvency proceeding where it is applicable and seasonably invoked by the United States. Field v. United States, 9 Pet. 182, 200, 9 L.Ed. 94 (1835), per Marshall, C. J. See also Michigan v. United States, 317 U.S. 338, 340, 63 S.Ct. 302, 87 L.Ed. 312 (1943); United States v. Emory, 314 U.S. 423, 426–427, 62 S.Ct. 317, 86 L.Ed. 315 (1941); Barnett v. American Surety Co. of New York, 77 F.2d 225, 227 (10th Cir., 1935). Cf. United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 356–357, 65 S.Ct. 304, 89 L.Ed. 294 (1945) (federal claim entitled to priority over landlord's distress lien accorded priority by Virginia statute). Hence, reliance by appellants upon the Virginia priority statute is misplaced, for however effective it may be on its face to secure their liens against competing nonfederal claims, it is ineffective against claims of the United States. United States v. Security Trust & Savings Bank, 340 U.S. 47, 51, 71 S.Ct. 111, 95 L.Ed. 53 (1950); Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 374–375, 67 S.Ct. 340, 91 L.Ed. 348 (1946).

 On the other hand, the SBA having asserted consistently throughout these proceedings its priority under the federal insolvency statute,[17] it cannot simultaneously claim benefit of the common law rule, recently reformulated in United States v. City of New Britain, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954), by which "the first in time is the first in right."[18] In the

16. Nor are we persuaded by appellants' claim that "to impose an uncontemplated governmental priority in this case would be, ironically, to frustrate and nullify the legitimate and salutary purposes of the Small Business Act." A similar argument was considered and rejected by the Supreme Court in Small Business Administration v. McClellan, 364 U.S. 446, 453, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960).

17. The present appeal is distinguishable in this respect from United States v. Bond, 279 F.2d 837, 841 (4th Cir., 1960); United States v. Latrobe Construction Co., 246 F.2d 357, 362 (8th Cir., 1957);

and Southern Railway Co. v. United States, 306 F.2d 119, 125 (5th Cir., 1962). In each of these cases, the debtor was insolvent but the United States failed to invoke its section 191 priority and was therefore precluded from asserting it for the first time on appeal.

18. This rule was first postulated for the Supreme Court by Chief Justice Marshall in Rankin v. Scott, 12 Wheat. 177, 179, 6 L.Ed. 592 (1827), a case dealing with relative priorities between two private lienholders. No federal statute was involved. Prior to New Britain, the Supreme Court only once made reference

New Britain case, involving a governmental claim of priority for federal tax liens, the Supreme Court repeatedly asserted that no question of insolvency was at stake and that section 191 was for that reason inapplicable. Indeed, to reinforce the point, the Court cited and carefully distinguished an earlier lien priority case, United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953), solely on the ground that the United States in Gilbert had proven the taxpayer insolvent and invoked section 191. Therefore, "in the absence of a statute to the contrary," the Supreme Court felt free in New Britain to resort to the common law principle now advanced by the SBA. We, on the other hand, are bound by the existing facts to give effect to the long-standing congressional declaration of priority embodied in section 191. We are not at liberty to supersede the unambiguous, clearly applicable statutory test with one rooted in common law.[19]

## III. EFFECT OF THE BANK'S ASSIGNMENT

■ Judged in the light of Small Business Administration v. McClellan, 364 U.S. 446, 450, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960), a case remarkably similar to our own, the SBA's claim to priority is wholly unaffected by the fact that formal assignment of the note evidencing the debt was not made by the participating bank until after the present proceedings were initiated. Nor does the SBA's contractual obligation to turn over 10% of any recovery on the note to the bank preclude any priority to which SBA is otherwise entitled. What the SBA does with any money collected on its 90% fractional interest in the loan is of no consequence to the issue of whether it may claim a priority. Id., 364 U.S. at 451–452, 81 S.Ct. at 195–196, 5 L.Ed.2d 200. On the other hand, we agree with the District Court's conclusion that the Government's statutory priority does not attach to the 10% fractional interest, in the note, of which the bank was the beneficial owner before the assignment was made to the Government.

■ In the McClellan case, the Supreme Court merely decided that the Government's priority extended to that portion of the loan as to which it initially held beneficial ownership, i. e., the portion of the loan consisting of funds put up by the SBA. The Court did not hold that the fractional interest put up by the private bank was entitled to priority. We think that the question whether the

to the "first in time" principle of Rankin v. Scott, and that was by Justice Baldwin in a dissenting opinion. Ex parte Christy, 3 How. 292, 332, 11 L.Ed. 603 (1845). However, the New Britain decision was also foreshadowed by United States v. City of Greenville, 118 F.2d 963, 966 (4th Cir., 1941), wherein Judge Parker, noting that section 191 was under the circumstances inapplicable, drew upon the "first in time" principle and sustained the priority of a governmental tax lien attached to the property of a solvent debtor.

19. While it has been recognized that the United States may avail itself of the "first in time" rule where it is asserting priority under a federal mortgage lien, as opposed to a tax lien, United States v. County of Iowa, 295 F.2d 257, 258–259 (7th Cir., 1961); United States v. Roessling, 280 F.2d 933, 936 (5th Cir., 1960); Southwest Engine Co. v. United States, 275 F.2d 106, 107 (10th Cir., 1960); United States v. Ringwood Iron Mines, 251 F.2d 145, 146–147 (3d Cir., 1958); United States v. Latrobe Construction Co., 246 F.2d 357, 364–366 (8th Cir., 1957), we know of no case in which the rule has been substituted in lieu of section 191, where that statute is both applicable and timely asserted. On the contrary, the federal courts have resorted to the common law rule only in those instances in which the priority of the United States, for one reason or the other, "is not made paramount by statute." Parker, C.J., in United States v. City of Greenville, 118 F.2d 963, 966 (4th Cir., 1941). See also Glenn v. American Surety Co., 160 F.2d 977, 982 (6th Cir., 1947); United States v. Schroeder, 204 F.Supp. 199, 202–203 (S.D.Iowa 1962); and cases cited in n. 17, supra.

fractional interest that was assigned by the bank to the Government in this case is entitled to priority is governed by the principles of Nathanson v. N. L. R. B., 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952). In denying priority for a claim asserted by the Labor Board, the Court said in Nathanson:

> "It does not follow that because the Board is an agency of the United States, any debt owed it is a debt owing the United States within the meaning of R.S. § 3466. The priority granted by that statute was designed 'to secure an adequate revenue to sustain the public burthens and discharge the public debts.' [Citation omitted.] There is no function here of assuring the public revenue. The beneficiaries of the claims are private persons * * *.
>
> "* * * We cannot * * * give priority to a claim which the United States is collecting for the benefit of a private party." Id., 344 U.S. at 27–28, 73 S.Ct. 82–83, 97 L.Ed. 23.

Distinguishing but not overruling Nathanson in the McClellan decision, the Court stated that: "This Court's denial of priority in that case, involving claims in which the United States had no financial interest, would not justify a denial here where *the money was loaned by*, and the debt sought to be collected is due to, *the United States*." 364 U.S. at 451, 81 S.Ct. at 195, 5 L.Ed.2d 200 (Emphasis added). Read together, the McClellan and Nathanson cases indicate that while the Government is free to dispose, as it wishes, of funds as to which it is entitled to a priority, it may not claim a priority for that portion of the debt that does not represent money actually loaned by the SBA. Consequently, in this case the SBA is entitled to a priority as to only 90% of the note.

The judgment of the District Court is therefore affirmed as modified.

Modified and affirmed.