606

## FIRST NAT. BANK OF BRECKENRIDGE, TEX., v. BRIDGEPORT MACH. CO. et al.

### No. 1736—6168.

Commission of Appeals of Texas, Section A.
Jan. 24, 1934.

James E. Allison, of Breckenridge, Goggans & Allison, of Dallas, and Harrell & Allison and P. B. Carroll, all of Breckenridge, for plaintiff in error.

Ben J. Dean, of Breckenridge, for defendant in error Bridgeport Machine Co.

Julius H. Runge, of Dallas, for defendant in error Godley Oil & Gas Co.

B. C. Lacey, of Breckenridge, in pro. per.

HARVEY, Presiding Judge.

The controversy in this suit arises from the conflicting claims asserted by the First National Bank of Breckenridge and the Bridgeport Machine Company, respectively, to an unpaid balance due by the Godley Oil & Gas Company for the drilling of an oil well by B. C. Lacey under a drilling contract between the latter and the Godley Company. The sum in controversy was deposited in the registry of the trial court by the Godley Company, and, on trial of the case, the trial court upheld the claim of the bank to the fund, and rendered judgment accordingly. The Bridgeport Company appealed, and the Court of Civil Appeals reversed that judgment and rendered judgment in favor of the Bridgeport Company for said fund to the extent of its claim as materialman. 44 S.W.(2d) 414. The bank has been granted the writ of error.

The facts, so far as need be stated, are substantially as follows:

On May 8, 1929, B. C. Lacey, a drilling contractor, entered into a contract with the Godley Company, the owner of an oil and gas lease, to drill an oil well for said company, on the lease. Lacey, the contractor, was to furnish all labor and material for the work. The work was completed in due time, and the fund in controversy constitutes the balance of the contract price of the work which the Godley Company owes under said drilling contract. A few days after the drilling contract was made, Lacey assigned to the bank his claim to the sums that were to become due from the Godley Company under the drilling contract. The Bridgeport Company afterwards furnished material to Lacey, for the work, and has never been paid therefor. Said company, in due time, complied with all statutory requirements to fix its materialman's lien. It is thus seen that the question presented by the facts stated is simply whether or not, in a case where a drilling contractor has contracted with the property owner to furnish the labor and material for the drilling of an oil well, an assignment by the contractor of his claim to funds arising under the contract carries to the assignee the superior right to said funds, as against a materialman who afterwards furnishes material to the contractor, for the work, and complies with the statutes regarding the fixing of a materialman's lien on the property owner's property.

Respecting the drilling of an oil well, under a contract such as involved in this controversy, article 5474 of the Revised Statutes, as amended by Acts 1929, c. 223, § 2 (Vernon's Ann. Civ. St. art. 5474) provides in effect that a furnisher of material to the contractor, for the work, shall have a lien on the leasehold estate and other designated property on the lease. Respecting the matter of fixing such lien, the terms of article 5476 of the Statutes plainly disclose the legislative intent to bring that matter under operation of the statutes which provide the mode of fixing the lien of a furnisher of material to a building contractor. As regards the obligation of the owner to the contractor, the last-mentioned statutes, when complied with by the materialman, "have substantially the same effect as a transfer of the obligation of the owner, by the contractor to the materialman, to the extent required to pay the account for labor and material." Wilson v. Sherwin-Williams Paint Co., 110 Tex. 160, 217 S. W. 372; Stanfill v. Penniman Gravel, etc., Co. (Tex. Com. App.) 27 S.W. (2d) 135.

All the statutes mentioned above were in force when the drilling contract between the Godley Company and Lacey, the contractor, was made. The right of Lacey to the sums to become due from the Godley Company under the contract became subject to the poten-

tial rights of materialmen in all respects the same as if the statutes had been expressly referred to or embodied in the contract as part of its terms. Respecting said sums, Lacey could transfer to the bank no greater right than he had. Winder Bros. v. Sterling, 118 Tex. 268, 12 S.W.(2d) 127, 14 S.W.(2d) 802; Metropolitan Casualty Ins. Co. v. Cheaney (Tex. Com. App.) 55 S.W.(2d) 554.

It follows, therefore, that the Bridgeport Company having duly complied with all relevant statutory requirements, that company has, to the extent of its claim for the material furnished, the superior right to the fund in controversy.

For the reasons shown, we recommend that the judgment of the Court of Civil Appeals, reversing the judgment of the trial court, and rendering judgment in favor of the Bridgeport Company, be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.