**IDECO DIVISION OF DRESSER INDUS-TRIES, INC., Plaintiff,**

v.

**CHANCE DRILLING COMPANY, Inc., et al., Small Business Administration, Impleaded Defendants, Defendants.**

Civ. A. No. 63–H–620.

United States District Court,
S. D. Texas,
Houston Division.

July 16, 1968.

Baker, Botts, Shepherd & Coates, J. Daffan Caldwell, Houston, Tex., for plaintiff.

Morton L. Susman, U. S. Atty., William B. Butler, Asst. U. S. Atty., for Small Business Administration, defendant.

Butler, Binion, Rice, Cook & Knapp, John L. McConn, Jr., Houston, Tex., for Bank of Texas, defendant.

Minter & Graham, Sam S. Minter, Houston, Tex., for Ellen Picton Chance, defendant.

## MEMORANDUM AND ORDER.

HANNAY, District Judge.

Plaintiff moves for a rehearing on its Motion for Summary Judgment. The Motion for Rehearing contains verified proof that the defendant Chance Drilling Co. is insolvent and has committed acts of bankruptcy within the meaning of 11 U.S.C.A. § 21(a) (3). The United States now accepts this proof as conclusive of the only material fact issue heretofore unresolved in the case and enters its cross-motion for summary judgment. The case is ripe for disposition by summary judgment.

The dispute centers around a deposit in the registry of the Court which had been awarded to defendant Chance under an arbitration agreement and which, ancillary to the principal suit, was the subject of an interpleader action whereby the United States, representing the Small Business Administration, hereafter S.B.A., and other parties were brought into the case.

The principal suit by Plaintiff, which is here under federal removal jurisdiction, is on sworn accounts and for foreclosure of a state statutory lien (Amount: $14,477.35) and arises out of labor and materials furnished in the making of emergency repairs on a Chance drilling rig. The statutory lien claimed by Plaintiff purports to be upon an oil, gas and mineral lease owned by Defendants Gulf Coast Leaseholds, Inc., (for whom Chance was drilling at the time material herein), Texas Consolidated Petroleum Corporation, and Alfred C. Glassell, Jr. These latter Defendants, in response to the suit for foreclosure, filed the interpleader action pursuant to which they tendered a sum of $16,869.45 in the registry of the Court, disclaimed all interest in the sum, and brought in as claimants to the fund: 1) The Plaintiff, 2) The S.B.A. of the U.S., 3) The Bank of Texas, and 4) Ellen Picton Chance. Removal of the case to federal jurisdiction was at the instance of the United States, and the deposited sum was thereupon transferred to the registry of this Court.

The United States additionally cross-claims against defendant Chance Drilling Co., Inc., its President R. L. Chance Sr., and his wife Ellen Picton Chance, for all sums owing to the S.B.A. and the Bank of Texas in connection with a loan made by and under an assignment from the Bank of Texas. It is not alleged or claimed that the security held by the government specifically relates to the property against which the Plaintiff asserts a specific lien. On Motion of the United States, its other action against defendant Chance Drilling Co. for certain withholding and excise taxes, penalties, and interest, has heretofore been dismissed without prejudice.

## I.

Undisputed Facts Concerning the Insolvency of Chance in Relation to the Competing Claims of Plaintiff and the United States.

1. R. L. Chance Sr., by uncontroverted affidavit subscribed to on July 1, 1966, avows as President of Chance Drilling Co. that it was insolvent from

December 25, 1960, until the abovementioned date " * * * as its liabilities exceeded its assets and it was unable to meet its obligations when they became due". This factor standing alone does not suffice to bring into play Section 191 of Title 31 U.S.C.A. and activate the priorities it confers upon the United States. United States v. Oklahoma, 261 U.S. 253, 260, 43 S.Ct. 295, 67 L.Ed. 638.

■ 2. There is also of record, however, the uncontroverted affidavit of Mr. Gerald F. Ryan, then Regional Counsel for the Small Business Administration in Houston, Texas, that he had located in the judgment records in the office of the County Clerk of Harris County, Texas some " * * * eight judgments against Chance Drilling Co., Inc., *dating from December 19, 1962 to October 30, 1964.* (Emphasis added throughout.) None of the judgments which I examined on record have been released or discharged, as reflected by the records of the County Clerk, Office of Harris County, Texas." Apart from the uncontroverted nature of the affidavits, it has support in three certified copies of Abstract of Judgments against Chance dated between November 27, 1962 and February 7, 1963. That any of these judgments should be allowed to stand unsatisfied and unliquidated for a period of thirty days constitutes *an act of bankruptcy* within the meaning of the federal bankruptcy act, see Title 11, U.S.C.A. Section 21(a) (3) and under the circumstances of this case. For the requisites here to the existence of a judgment lien under Texas law see: Articles 5447, 5448, 5449, and 5450 Vernon's Ann.Texas Civil Statutes. See also: 34 Tex.Jur.2d, Judgment Liens, Section 564–572, pages 675–690.

■ On the basis of the facts appearing of record, the provisions of Title 31, U.S.C.A. Section 191 became operative only upon the commission of Defendant's first act of bankruptcy in law, to wit, the expiration of thirty days after the rendition and due recordation of the civil judgment against it of November 27, 1962. See: United States v.

Belkin, 6 Cir., 358 F.2d 378, at 381–382, for the proposition that in order for the United States to assert its priority under 31 U.S.C.A. § 191 there must be a determination of the debtor's insolvency on the basis of at least one of the express requirements set out on the face of the statute. *Accord*: United States v. Oklahoma, supra, cited with approval in United States v. Texas, 314 U.S. 480, 486, 62 S.Ct. 350, 86 L.Ed. 356; See also: Field v. United States, 9 Pet. 182, 200, 34 U.S. 182, 200, 9 L.Ed. 94.

3. The question now presented is what were Plaintiff's established lien rights at the time of Chance's legal and statutory insolvency within the meaning of 31 U.S.C.A. § 191?

Plaintiff's Exhibit "A" to its Motion for Summary Judgment reflects that on July 6, 1962 it filed its affidavit with the Court Clerk of Gonzales County, Texas asserting its claim of lien for the furnishing of material, labor, and supplies to Chance Drilling Co. The lien was asserted under Articles 5473, 5474, 5476, and 5476a, 5476b and 5476c of the Texas Civil Statutes and the dates of performance in respect to the said services and supplies ranged between December 28, 1961 and January 8, 1962.

"Art. 5473. Contractor's lien

"Any person, corporation, firm, association, partnership, artisan, materialman, laborer or mechanic who shall, under contract, expressed or implied, with the owner of any land, mine or quarry, or the owner of any gas, oil or mineral leasehold interest in land, or the owner of any gas pipeline or oil pipeline, or the owner of any oil or gas pipeline right-of-way, or with the trustee, agent or receiver of any such owner, perform labor, furnish or haul materials, machinery or supplies used in digging, drilling, torpedoing, operating, completing, maintaining or repairing any such oil or gas well, water well, mine or quarry, or oil or gas pipeline, shall have a lien on the whole of such land or leasehold interest therein, or oil pipeline, or gas pipeline,

including the right-of-way for same, or lease for oil and gas purposes, the buildings and appurtenances, and upon the materials, machinery and supplies so furnished or hauled, and upon all other materials, machinery and supplies owned by such owner and used in digging, drilling, torpedoing, operating, completing, maintaining or repairing any such oil or gas well, water well, mine or quarry or oil or gas pipeline, and upon said oil well, gas well, water well, oil or gas pipeline, mine or quarry for which the same are furnished or hauled, and upon all of the other oil wells, gas wells, buildings and appurtenances, including pipeline, leasehold interests, and land used in operating for oil, gas and other minerals, upon such leasehold or land or pipeline and right-of-way therefor, for which said materials, machinery or supplies were furnished or hauled or labor performed. Provided, that if labor, supplies, machinery or materials are furnished to or hauled for a leaseholder, the lien hereby created shall not attach to the underlying fee title to the land. Acts 1917, p. 28; Acts 1929, 41st Leg., p. 477, ch. 223, § 1; Acts 1957, 55th Leg., p. 482, ch. 231, § 1."

"Art. 5474. Sub-contractor's lien

"Any person, corporation, firm, association, partnership or materialman who shall furnish or haul such machinery, material or supplies to a contractor or subcontractor, or any person who shall perform such labor under a subcontract with a contractor, or who as an artisan or day laborer in the employ of such contractor or subcontractor shall perform any such labor, shall have a lien upon all such property or interest described in the preceding article, including right-of-way, for which said material and supplies were furnished or hauled and labor performed, in the same manner and to the same extent as the original contractor, for the amount due him for material furnished or for such hauling or labor

performed. Acts 1917, p. 28; Acts 1929, 41st Leg., p. 477, ch. 223, § 2."

"Art. 5476. Proceedings to enforce lien

"Liens herein created shall be enforced within the same time and in the same manner as provided in the preceding Chapter. * * * "

"Art. 5476a. Securing lien; contents of affidavit

"Every original contractor, journeyman, day laborer, or other person, within six (6) months after the indebtedness accrues, shall file in the office of the County Clerk of the county where the property is situated, to be recorded in a book kept by the County Clerk for that purpose, a statement verified by affidavit setting forth the amount claimed and the items thereof, the dates of performance or furnishing, the name of the owner of the land, mine or quarry, gas, oil or mineral leasehold interest, gas pipeline or oil pipeline, or oil or gas pipeline right-of-way, if known, the name of the claimant and his mailing address, a description of the land, mine or quarry, gas, oil or mineral leasehold interest, gas pipeline or oil pipeline, or oil or gas pipeline right-of-way, and if the claimant be a claimant under Article 5474, the name of the person for whom the labor was performed or materials or service furnished together with a statement that the claimant has given to the owner, his agent or representative or receiver, notice in writing as required by Article 5476(c). Added Acts 1953, 53rd Leg., p. 363, ch. 89, § 2, as amended Acts 1957, 55th Leg., p. 482, ch. 231, § 3."

"Art. 5476b. Furnishing under a single contract

"When labor is performed by the day or week, then the indebtedness shall be deemed to have accrued at the end of each week during which labor is performed. When material or services are furnished, the indebtedness shall be deemed to have accrued at the date of the last delivery of such mate-

rial or services; and all materials or services furnished by any person upon the same land, mine or quarry, gas, oil or mineral leasehold interest, gas pipeline or oil pipeline, or oil and gas pipeline right-of-way, shall for the purposes of this Act be considered as having been furnished under a single contract regardless of whether or not the same was furnished at different times or on separate orders, provided that no more than six (6) months shall have elapsed between the date of furnishing of such material and services and the date on which materials or services are next furnished. Added Acts 1953, 53rd Leg., p. 363, ch. 89, § 2, as amended Acts 1957, 55th Leg., p. 482, ch. 231, § 4."

"Art. 5476c. Notice to owner that lien claimed

"Any person claiming a lien under Article 5474 shall, at least ten (10) days prior to the filing of his statement of lien as provided for in Article 5476a, furnish the owner with written notice that a lien is claimed, the amount thereof, the name of the person from whom the same is due and a description of the land, mine or quarry, gas, oil or mineral leasehold interest, gas pipeline or oil pipeline, or oil or gas pipeline right-of-way; and thereafter said owner shall be authorized to retain in his hands the amount claimed until the same is settled or determined not to be owing. No owner shall be liable to any such claimant for any amount in excess of the amount still owing to the original contractor at the time of receipt of such notice. Added Acts 1957, 55th Leg., p. 482, ch. 231, § 5."

## II.

The issue between the remaining parties is one of entitlement to the deposited fund. Plaintiff argues that the question is not one of priority among competing liens upon the property of an insolvent debtor; albeit one of the lienors is the United States which claims: *that Chance was insolvent at the time and at all times since it incurred its debt to Plaintiff*, that Chance had committed an act of bankruptcy within the meaning of Title 11, U.S.C.A. Section 21(a) (3), and that this brings into play the federal insolvency statute, Title 31, U.S.C.A. Section 191. Rather, Plaintiff argues that the fund is now and was at all material times its own property as a lien holding subcontractor under governing Texas law and cites the U. S. Supreme Court authority of United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371, affirming United States v. Durham Lumber Co., 4 Cir., 257 F.2d 570, for the proposition that the state law defines the property right, if any there be, of the debtor-contractor-tax payer such as we have here.

In *Durham*, certain general contractors were adjudicated bankrupts after having defaulted both on the payment of federal taxes and on the payment of amounts due to certain subcontractors on the construction of certain buildings in North Carolina. The owners of the buildings paid to the trustee in bankruptcy the amount remaining due under the contract, and it was agreed that the subcontractors could assert the same rights against the trustee as they could have asserted against the owners. Under Sections 6321 and 6322 of the Internal Revenue Code of 1954, the United States claimed priority for its tax lien on the "property and rights to property" belonging to the general contractors. The Court of Appeals held that, under North Carolina law, the general contractors had no property interest in the amount due under the general construction contract, except to the extent that such amount exceeded the aggregate of all amounts due to subcontractors, and that, therefore, the Government could recover only so much of the construction price as would remain unpaid after deduction of a sum sufficient to pay the subcontractors. The U. S. Supreme Court affirmed the judgment below on the principle that the appellate court's characterization of the tax-payer's property interest under the law of North

Carolina was not clearly erroneous or unreasonable.

The government's position is that the Plaintiff's lien was not choate, i. e., legally perfected, by the applicable federal choate lien standard, citing United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071; People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348, because court action would be required to enforce it. As an initial consideration, however, this tends to overlook the inherent power of the several states to define the relationships of and the right to property which is a precondition to the attachment to said property of the consequences of superior lien ownership. Morgan v. CIR, 309 U.S. 78, 82, 60 S.Ct. 424, 84 L.Ed. 585; United States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135. In Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365, as well as in *Durham Lumber Co.*, the state law was held to define the property interest, if any, of the contractor to a deposited fund in a controversy involving its subcontractor and the United States which held a lien for taxes.

■ In *Durham Lumber Co.*, the lien holding subcontractor was given an immediate cause of action for labor and materials furnished; in *Aquilino*, the New York law appeared to create the general contractor a trustee of the funds that were due from it to the subcontractor. Here in Texas, the governing state law is similar to that in North Carolina as reflected in *Durham Lumber Company* in respect to the overriding right of the subcontractor furnishing labor and materials. See: Texas Civil Statutes, Articles 5473, 5474, 5476, 5476a, 5476b, 5476c and the following case authorities, to wit, Wilson v. Sherwin-Williams Paint Co., 110 Tex. 156, 217 S.W. 372; Stanfill v. Penniman Gravel & Material Co., Tex.Com.App., 27 S.W.2d 135; Green v. H. E. Butt Foundation, 5 Cir., 217 F.2d 553. The foregoing statutory and decisional authorities apply equally in drilling contract situations.

## III.

### Effectiveness of Claimed Assignment to Mrs. Chance as Against Plaintiff.

■■ Mrs. Chance's claim of an assignment wants for actual proof in the record. We must assume that it is that assignment which is referred to in Exhibit "B" to Plaintiff's Motion which is a certified copy of a Notice of Assignment filed with the County Clerk of Harris County, Texas on January 10, 1962, pursuant to Art. 260–1, Texas Civil Statutes. But when Plaintiff's statutory lien was perfected on July 6, 1962, it related back and was protected against any interim assignment by Chance of the proceeds due under the drilling contract. First National Bank of Breckenridge, Tex. v. Bridgeport Machinery Co., Tex. Com.App., 67 S.W.2d 606. The Notice of Assignment was not recorded until January 10, 1962, after Plaintiff had furnished the labor and materials. Under Art. 260–1, Texas Civil Statutes, an assignment of an account receivable for drilling oil wells is not effective until recorded in Texas. Parker Square State Bank v. Triangle Supply Co., Tex.Civ. App., 364 S.W.2d 418. The claimed assignment of Mrs. Chance is additionally weak as against Plaintiff's claim. The record shows without dispute that the claimed assignment was never recorded in Gonzales County, Texas, the site of the drilling operation, as required by law. Article 260–1, Texas Civil Statutes. See: Plaintiff's Exhibit "C".

## IV.

1. The United States cites and relies heavily upon the case of W. T. Jones & Co. v. Foodco Realty, Inc., 4 Cir., 318 F. 2d 881 for added authority that this case is governed by the Federal Insolvency Act, Title 31 U.S.C.A. Section 191, with "[I]ts command * * * that the United States shall be accorded an absolute priority over the claims of all general lienholders * * * even though its own lien is general and notice thereof has not been properly filed and recorded." 318 F.2d, at 885.

W. T. Jones & Co. v. Foodco Realty did involve a contest for priority payment from an insolvent between the S.B.A. and certain mechanic liens as imposed and created under the law of Virginia. There was no question of fact there of the debtor's crucial insolvency or that its insolvency arose while construction was in progress and before the mechanic's liens were filed. More importantly, in point of fact, the loan extended by *the S.B.A. antedated in point of time the accrual of the mechanics lien*, 318 F.2d, at 884. See also the opinion of the District Court, to wit, W. T. Jones & Co. v. Foodco Realty, Inc., et al., 206 F.Supp. 878, for a thorough factual account of the case. Significantly, the Court of Appeals, having decided the case under its particular facts to be controlled squarely by the statute (31 U.S.C.A. § 191) declined to rule simultaneously on the lien priority question, the common law rooted principle 'first in time is first in right', as a dispositive issue in the case. Citing, distinguishing, and relying on United States v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520, and United States v. Gilbert Associates, Inc., supra. See also and compare: United States v. Clover Spinning Mills Co., 4 Cir., 373 F.2d 274 and H. B. Agsten & Sons, Inc. v. Huntington Trust and Savings Bank, 4 Cir., 388 F.2d 156.

2. The rule of decision in United States v. Atlantic Municipal Corp., 5 Cir., 212 F.2d 709, would seem to apply to instant case. With competition existing between a state lien for taxes and federal tax liens, as against limited surplus funds held by an insolvent corporation, the government invoked, as here, both the federal tax lien statute and the federal priority statute. It was factually undisputed that the state tax liens attached first in point of time by five months. The case does not reflect that these state liens had in their priority matured to the point of a court judgment. Citing and relying on the then recently announced authority of United States v. City of New Britain, Conn.,

347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520, the Court disposed of the issue under the federal lien statute on the principle "the first in time is the first in right." Then, denying relief under the invoked insolvency statute, the Court stated emphatically:

> "This statute applies only as against unsecured debts, that is, debts not secured by a specific and perfected lien. It has never been, we think it will never be, applied as it is sought to be applied here, to accord payment to a debt due the United States in preference to a claim secured by a lien which is prior in time and superior in law to the lien of the United States securing the debt for which preferential payment is sought."

*Accord:* Exchange Bank & Trust Co. v. Tubbs Manufacturing Co., 5 Cir., 246 F.2d 141; United States v. Morrison, 5 Cir., 247 F.2d 285 (albeit here the government prevailed over a mere state equitable lien manifestly falling short of then recognized federal standards for state lien choateness under Section 6323 (a) (1) of Title 26, U.S.C.A.) See also: Southern Railway Co. v. United States, 5 Cir., 306 F.2d 119, 125–126, where the authority of United States v. Atlantic Municipal Corp., supra, is cited for the proposition that the federal insolvency statute (31 U.S.C.A. § 191) must defer to a validly recorded first mortgage. Compare: United States v. Vermont, 377 U.S. 351, at 357–358, 84 S.Ct. 1267, 12 L.Ed.2d 370.

## V.

In light of the findings of fact and conclusions of law hereinabove reached in this opinion, and by force of the clarifying and climactic decisions of *Durham Lumber Co.* and *Aquilino*, I find nothing in the long line of U. S. Supreme Court decisions on state lien choateness and perfection to defeat the Plaintiff Indeco's claim in this case. See and compare: The United States Supreme Court cases noted in footnote number 4, United States v. Morrison,

supra, 247 F.2d, at 288, opinion by Circuit Judge John R. Brown. See also: United States v. Vorreiter, 355 U.S. 15, 78 S.Ct. 19, 2 L.Ed.2d 23, Per Curiam, relying on the landmark case of United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; and United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770, citing as still authoritative *Security Trust & Savings Bank* ('first in time, first in right') and United States v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (the federal standard of choateness being "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established"). 347 U.S., at 84, 74 S.Ct., at 369. *Pioneer American Insurance Co.* does not adversely affect the decision in this case with its exact application of federal standards in denying priority to a state lien consisting of a mortgagee's claim for a "reasonable attorney's fee" uncertain in amount because unliquidated and requiring future adjudication to determine with certainty the amount due.

## VI.

I hold that the decision reached in this case is unaffected by the fact that this is a non-bankruptcy proceeding.

## VII.

It follows from the foregoing that the Plaintiff Ideco is entitled to its Motion for Summary Judgment in respect to its principal claim of $14,477.35 against the fund in the registry of the Court.

The remaining fund in the registry of the Court is properly the claim of the United States of America, the Small Business Administration, and the Bank of Texas pursuant to the agreement of proportional entitlement thereto between them.

The parties will submit an appropriate order.